CHARLES E. HODGES *et al. v.* PUBLIC SERVICE COMMISSION *et al.*

(No. 7014)

Submitted July 21, 1931. Decided August 12, 1931.

*Steptoe & Johnson, Stoddard M. Stevens, Jr., Louis A. Johnson, Chesney M. Carney,* and *W. J. Maier, Jr.,* for appellant.

*William S. John, Robert T. Donley, John G. Zevely, Frank A. O'Brien,* and *Carl B. Galbraith,* for appellees.

*T. L. Read, Paul J. Carr,* and *John Q. Hutchinson,* for City of Hinton and County Court of Summers County, *amici curiae.*

*D. E. Cuppett,* for City of Thomas, Town of Davis, Board of Education of Fairfax District, *amici curiae.*

*Alan G. Bolton* for L. O. Mott and County Court of Tucker County, *amici curiae.*

650

*W. K. Pritt* for City of Parsons, Board of Education, Black Fork District, and River City Club, *amici curiae*

*John H. Meek* and *John V. Ray,* for Vinson, Thompson, Meek & Scheer, of Huntington, and Payne Minor and Bouchelle, *amici curiae.*

HATCHER, JUDGE:

This proceeding was instituted by West Virginia Power & Transmission Company before the public service commission under the water power act of 1929. See ch. 58, Acts 1929. The commission granted the applicant a license to construct a series of dams on Cheat River and its watershed. The protestants are citizens of West Virginia who resisted the application before the commission, and then appealed to the circuit court of Kanawha county which reversed the commission and remanded the proceeding. The applicant secured an appeal to this court.

The act made the governor of the state a member of the public service commission and authorized the commission to investigate the effect of any proposed development of water power upon railroads, cities, towns and villages and on the development of other natural resources; to hold hearings, etc., in connection with an application for a water power license; and directed the commission (among other things) "to weigh from the standpoint of the state as a whole and the people thereof the advantages and disadvantages arising therefrom before acting upon any application for a license", and to grant no license until the commission should have determined that the advantages substantially exceeded the disadvantages. The act provided for an appeal as a matter of right by any party of record from any decision of the commission granting or refusing to grant a license (and from any other final decision or order of the commission) to the circuit court of Kanawha county, with trial on the appeal *de novo* upon the original record before the commission and upon any additional evidence offered by any party in interest. An appeal from the circuit court to this court was provided, to be "upon the record in the circuit court in the usual manner". If reversed on either appeal, the act directed that the case be re-

manded to the commission for further proceedings "in accordance with the decision of the court".

The protestants initially contend that the act violates article V of the constitution of West Virginia, in conferring legislative powers upon the governor, and, on appeal, upon the circuit court of Kanawha county. The applicant challenges the right of the protestants to raise constitutional questions on the ground that they have no personal or proprietary interest in the subject matter. Lack of such interest would ordinarily sustain this challenge. However, we have no jurisdiction to entertain this appeal unless it be conferred by the act. "By the plain terms of the constitution, appellate jurisdiction is limited to controversies arising in *judicial proceedings,* and the 'other appellate jurisdiction' that may be authorized must relate to 'civil and criminal cases', that is, some judicial proceedings begun in an inferior judicial tribunal. Such is the effect of our decisions. In some of them we have denied appellate jurisdiction to review the judgments or decrees of the circuit courts on appeal from the orders of the board of public works, or other boards, involving simply executive or administrative matters, such as valuation of property for taxation, and the like. Never have we entertained jurisdiction from such decrees or orders of the circuit court unless the same have related to the taxability of the property." *Gas Co. v. P. S. Comm.*, 73 W. Va. 571, 578. Since our jurisdiction herein depends entirely upon the validity of the act, it is our duty to scrutinize the act before considering the merits of this proceeding, lest that consideration should be vain. Under this view, the supreme court of Massachusetts examined the constitutionality of a statute, even upon the suggestion of *amicus curiae,* holding: "The court will not usually consider the constitutionality of a statute upon objection made by a stranger whose rights are affected by it, and ordinarily the parties to the suit are the only persons permitted to raise such a question, but if the jurisdiction of the court depends entirely upon the validity of the statute, and the attention of the court is brought to that fact by persons interested in the effect to be given the statute, although not interested in the case before the court, it will consider whether it has juris-

diction before taking affirmative action." *Insurance Co. v. Hardison,* 199 Mass. 190, 85 N. E. 410, 127 Am. St. Repts. 478. See also *State* v. *Philipps,* (Fla.) 70 S. 367, 369; *Sherna* v. *State,* (Ariz.) 146 Pac. 494, 500.

We realize that we should consider the contention of the protestants "with great caution and delicacy" and not declare the act invalid unless so convinced beyond a reasonable doubt. *Bridges* v. *Shallcross,* 6 W. Va. 562, 574; Cooley's Const. Lim., (8th Ed.), ch. VII; Lewis's Sutherland, Stat. Const., (2nd Ed.), sec. 83; Sedgewick on Stat. and Const. Law, (2nd Ed.), 409. We are equally cognizant that the constitution represents the sovereign will of the people and that our duty is imperative to arrest the execution of a statute which sets at naught the constitution. Sedgewick, *supra,* 411; II Tucker on Const., sec. 364; Willoughby on the Const., sec. 12.

Article V is as follows:

> "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature."

The phraseology of the article follows that of the constitutions of Virginia and other older states. The framers of these older constitutions were deciples of such great political teachers as Blackstone, Montesquieu and Paley, who had declared that in order to prevent arbitrary conduct by those in control, the legislative, executive and judicial powers must be kept separate. See Story on the Constitution, (5th Ed.), ch. VII. These teachings had been exemplified in the division of governmental power practiced in England. Hamilton asserted: "There is no liberty if the powers of judging be not separated from the legislative and executive powers." His expression was but the common thought of his contemporaries. See Willoughby, *supra,* sec. 1058. Bryce, The American Commonwealth, I Vol., p. 26. So thoroughly were these early statesmen imbued with this idea, that the very

first resolution passed in the convention which framed our national constitution, called for a separation of governmental powers. Story refers to this division as "a fundamental proposition", Cooley as a "fundamental principle", and Ordronaux as "this fundamental truth". (Const. Leg. 344). "All writers on constitutional law," said Smith, J., in *The State* v. *Johnson,* 61 Kan. 803, 814, "are agreed that the functions of the three departments should be kept as distinct and separate as possible."

This historical background is reflected perfectly in the constitution of West Virginia. The separation of powers prescribed in article V is confirmed and consumated in other articles of the constitution, namely, article VI vests the legislative power in a senate and house of delegates; article VII forms the executive department, consisting of the governor, secretary of state, state superintendent of free schools, auditor, treasurer and the attorney general; and article VIII lodges the judicial power of the state "in a supreme court of appeals, in circuit courts and the judges thereof, in such inferior tribunals as herein authorized and in justices of the peace." We are aware that section 12 of article VIII confers on circuit courts "such other jurisdiction, whether supervisory, original, appellate or concurrent, as is or may be prescribed by law"; and that by reason of this clause, this court has upheld enactments imposing on circuit courts jurisdiction in such legislative matters as the valuation of property for taxation (on appeal) and the incorporation of towns. See *Mackin* v. *County Court,* 38 W. Va. 338, and *In re Union Mines,* 39 W. Va. 179, 182, in which the court said: "In discharging these functions the circuit court * * * acts as a part of the legislative branch of the government under the express authority of the constitution." The phrase "other jurisdiction" in section 12 is general. The inhibition in article V against the exercise of dual authority is specific. Recognizing the force of that inhibition, this court said that it "necessarily follows" if an act "in any degree requires the circuit court to exercise legislative powers, it is to that extent void." *Shepherd* v. *Wheeling,* 30 W. Va. 479, 481. So, instead of special authority for, the constitution

affords *express* authority against the circuit court becoming a legislative branch. *In re Union Mines* overlooks both the positive inhibition in article V and the entire constitutional design to separate the powers of government, as set forth in articles V, VI, VII and VIII. Prior to the words "other jurisdiction," section 12 mentions certain proceedings and cases in which circuit courts shall have jurisdiction, which the context clearly shows is *judicial* jurisdiction. No intimation is given there or elsewhere that circuit courts may assume the duties of another department, either as subordinates or as supervisors. We cannot agree that after delimiting the three departments of the government so precisely, the framers then meant by the words "other jurisdiction" to confer on circuit courts departmental authority in or over the other two departments. We adopt the natural inference that the "other jurisdiction" is jurisdiction essentially juridical (then or thereafter prescribed by law) over proceedings not named in the section.

This construction of section 12 is not to be taken as unsettling the practice of circuit courts to incorporate towns and to entertain appeals from boards of equalization and review on the valuation of property for taxation. This practice has been pursued in such a great number of cases and over so many years, that we are of opinion it should not be disturbed now. However, this procedure applies to local matters only; and we feel no obligation because of submission thereto, to approve the further delegation of legislative functions to the judiciary, particularly in a proceeding of statewide interest, such as this.

We are mindful that courts have not drawn "abstract analytical lines of separation" (37 Harv. L. Rev. 1014) between the departments and that there is some overlapping of judicial and administrative duties. Courts recognize "necessary areas of interaction" (idem) and not infrequently exercise powers which are technically administrative. Such encroachments on other departmental powers are undoubtedly proper when incidental to the performance of legitimate judicial functions. "The grant of power embraced in one of the great departments of government carries with it the right to

use means appropriate to the exercise of that power." *Ry. Company's Appeal,* 69 Conn. 576, 594. Willoughby, supra, sec. 1062. It would therefore seem that the plain language of article V calls not for construction, but only for obedience.

The local investigation and subsequent determination, by the commission, of the effect of a proposed development from "the standpoint of the State as a whole and the people thereof" (as required by the act) are clearly legislative in character. *Lbr. Co.* v. *Comm.,* 91 W. Va. 446, 450. "The question of what the public convenience requires is a political, not a legal one." *Fall* v. *Sutter Co.,* 21 Cal. 237. "Whether a certain drainage district should be organized, and what lands should be included in such a district for drainage purposes are legislative questions." *Funkhouser* v. *Randolph,* 287 Ill. 94. Upon the appeal, it is apparent that the legislature intended the circuit court to try and determine these legislative matters *de novo,* without regard to the findings of the commission. Such a proceeding would plainly traverse both mandates of article V. "Whether a drainage ditch proposed to be constructed * * * will be conducive to the public health, convenience or welfare, or whether the route. thereof is practicable, are questions of governmental or administrative policy, and are not of judicial cognizance, and jurisdiction over them by appeal or otherwise cannot be conferred upon the courts by statute." *Tyson* v. *Wash. Co.,* 78 Neb. 211, 12 L. R. A. (N. S.) 350. Accord: *Searle* v. *Yenson,* 118 Neb. 835, 226 N. W. 464, 69 A. L. R. 257 (see section 11 of note, commencing on page. 267); *Moreau* v. *The Board, etc.,* 68 N. J. L. 480, 482; *Appeal of Spencer,* (Conn.) 61 Atl. 1010, 1013; *Racing Comm.* v. *Ass'n.,* 136 Ky. 173; *Board* v. *Todd,* 97 Md. 247; *State* v. *Johnson, supra; Ass'n.* v. *Comm.,* (N. Y.) 119 N. E. 1027; *Case of Supervisors,* 114 Mass. 247, 251; *In re Co. Commrs.,* 22 Okla. 435; *In re North Milwaukee,* 93 Wis. 616, 623; *Stennerson* v. *Ry.,* 69 Minn. 353, 375; *Thompson* v. *Redington,* 92 Ohio St. 101; *In re Beasley,* 206 Iowa 229, 237; *Anway* v. *R. Co.,* (Mich.) 12 A. L. R. 26; *Peters* v. *U. S.,* 20 Fed. (2d) 741; *Muskrat* v. *U. S.,* 219 U. S. 346; *Keller* v. *Elec. Co.,* 261 U. S. 428.

For like reasons, the act also violates both the spirit and letter of the constitution, in imposing purely legislative duties on an executive, the governor.

We do not understand that the applicant and its *amici* seriously contend that the circuit court can properly perform these legislative duties (which, however, they term "administrative"), but they say the provisions relating to the appeal are not necessary to the validity of the act; that such provisions are severable; that the rest of the enactment is operative and valid, and should be upheld, particularly in view of the express declaration in the act that in case any separable part be held unconstitutional, the other parts should remain in effect. This declaration is not "an inexorable command" but is merely an "aid in determining the legislative intent." *Dorchy* v. *Kansas,* 264 U. S. 286. The fact that a workable act remains, after eliminating the invalid provisions, is not decisive of whether the provisions are separable. There are other considerations. The water power act immediately preceding the one under discussion was enacted in 1915. That enactment intrusted all discretionary matters solely to the public service commission. The addition of the governor to the commission and the trial *de novo* by the circuit court, as provided in the act of 1929, demonstrate that the legislature did not intend to intrust the administration of the act entirely to the public service commission as it had in 1915. Yet such would be the effect, if the provisions of the 1929 act which contravene the constitution be rejected, and the remaining provisions upheld. The law is settled that if the elimination of unconstitutional portions of an enactment would cause a result materially different from the legislative intention, as in this instance, then the unconstitutional portions are not separable and the entire act must be held inoperative. *Eckhart* v. *The State,* 5 W. Va. 515, 518; *Robert* v. *Police Court,* 148 Cal. 131; *State* v. *Patterson,* 50 Fla. 127; *Spraigue* v. *Thompson,* 118 U. S. 91; *Connolly* v. *Pipe Co.,* 184 U. S. 540. This conclusion was foreshadowed by James W. Simonton, Professor of Law at the University of West Virginia, in an able analysis of the act appearing in the December 1930 issue of the West Virginia Law Quarterly, as follows: "If the por-

tion held void is such a substantial part of the legislative scheme as to materially change the entire act, the whole act must be declared void. Thus if the appeals provided to the courts in section 13 were held invalid, leaving the decision of the commission as constituted absolute and final, the purpose of the legislature to have two court hearings would be defeated and clearly what is left would not be what the legislature contemplated and the whole ought to be void." Because of this material difference we are not warranted in presuming that the legislature would have passed the act without the parts which the applicant now proposes to sever. "While it is well settled by adjudication of this and other courts that if different sections of a statute are independent of each other, that which is inconstitutional may be disregarded, and valid sections allowed to stand and be in force, yet it is also the inflexible rule that where a portion of an act is valid and a portion invalid, and the court cannot say that the legislature would have passed the act with the void portion eliminated then the entire act must be held invalid." *Gas Co.* v. *Springfield,* 292 Ill. 236, 243-5, 126 N. E. 739, 18 A. L. R. 929; *Dorchy* v. *Kansas, supra,* 290; 6 R. C. L., subject, Constitutional Law, sec. 122.

This attempt of the legislature to commit one of its great responsibilities to the judiciary is a flattering display of confidence in our department. But we must reject this expansion of our power just as firmly as we should resist a reduction of our rightful authority. The legislature is the trustee of the state's resources. Courts can no more assume that trusteeship than they could correct legislative impolicy thereon. After one hundred years of observation, the supreme court of the United States extolled the tripartite division of governmental powers as "one of the chief merits" of the American system of written constitutions and said that it was essential to the successful working of the system "that the persons intrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to the others, but each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other." *Kilbourn* v. *Thompson,* 103 U. S.

168, 190-1. Loyalty to this system, under our oaths of office which exact support of the constitution, compels us to declare unconstitutional the act in its entirety.

Accordingly the judgment of the circuit court is reversed, and this court, proceeding to enter such judgment as the circuit court should have entered, sets aside the order of the public service commission and dismisses the application.

*Judgment reversed; order of the public service commission set aside; application dismissed.*