CITY OF HUNTINGTON

*v.*

STATE WATER COMMISSION

(No. 10318)

Submitted January 10, 1951.   Decided March 9, 1951.

*H. L. Ducker,* City Attorney, and *Paul W. McCreight,* for appellant.

*William C. Marland,* Attorney General, and *Thomas J. Gillooly,* Assistant Attorney General, for appellee.

RILEY, JUDGE:

The City of Huntington, under Code, 16-11, creating the State Water Commission, as amended and reenacted by Chapter 6, Acts of the Legislature, Regular Session, 1933; Chapter 130, Acts of the Legislature, Regular Session, 1937; Chapter 102, Acts of the Legislature, Regular Session, 1945; and Chapter 128, Acts of the Legislature, Regular Session, 1947, (Michie's Code, 1949, 16-11-5) was cited on July 21, 1949, by the State Water Commission (erroneously designated in the caption of the record before the commission as "The West Virginia Water Commission") to appear on August 5, 1949, to show cause why an order should not issue from the commission, regulating the system of pollution in the Huntington area by the drainage of untreated sewage of the City of Huntington into the Guyandotte and Ohio Rivers. A hearing was had and the commission found that the City "by its drainage of the untreated sewage of the City into the Guyandotte and Ohio Rivers does pollute said streams in such a manner as to make them contaminated, unclean and impure to such an extent that the water is both directly and indirectly detrimental to the public health; unsuitable with reasonable treatment for use as present or possible future source of public water supply and unsuitable for commercial, industrial, agricultural, and other reasonable uses."

Within the thirty-day period from the entry of the commission's order the City of Huntington filed its petition for review in the Circuit Court of Cabell County, and that court, holding that Section 7 was unconstitutional, which unconstitutionality served to vitiate the entire Act as violative of Article V of the Constitution of West Virginia, entered the final order complained of, and dismissed the petition from the docket of the court.

The statute contains no provisions for an appeal, writ of error, supersedeas or certiorari to any court; but Sec-

tion 7 thereof, which is the only provision of the statute which provides for a "review", reads:

"Any party feeling aggrieved by the entry of a final order by the commission, affecting him or it, may present a petition in writing to the circuit court of the county wherein the pollution originated or naturally flows, or to the judge of such court in vacation, within thirty days after the entry of such order, praying that such final order may be set aside or modified. The applicant shall deliver a copy of such petition to the secretary of the commission before presenting the same to the court or judge. The court or judge shall fix a time for the hearing on the application, but such hearing, unless by agreement by the parties, shall not be held sooner than five days after its presentation; and notice of the time and place of such hearing shall be forthwith delivered to the secretary of the commission, so that the commision may be represented at such hearing by one or more of its members or by counsel. For such hearing the commission shall file with the clerk of said court all papers, documents, evidence and records or certified copies thereof as were before the commission at the hearing or investigation resulting in the entry of the order from which the petitioner appeals. The commission shall file with the court before the day fixed for the final hearing a written statement of its reasons for the entry of such order, and after arguments by counsel *the court shall by order entered of record, make a finding as to whether the act complained of is a statutory pollution,* and certify the same back to the commission which shall make such changes in its order as will be necessary to make it comply with the law, as found by the court, governing the matter. The supreme court of appeals of the state shall have jurisdiction to review the order of the circuit court upon application of either party or any intervener. The prosecuting attorney of the county wherein the proceedings in the circuit court are had shall represent the commission, and the attorney general of the state shall represent it in any proceedings in the supreme court of appeals, and any intervener may be represented by counsel specially employed." (Italics supplied.)

Section 13, added to Code, 16-11, by Chapter 130, Acts of the Legislature, 1937, provides, among other things, that any mayor or councilman, who fails or refuses to discharge any duty imposed upon him by the Act, or by the final order of the State Water Commission, or any duty imposed upon him by the ordinance of any governing body of any municipal corporation, or private corporation, association, or other legal entity, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty-five dollars, nor more than one hundred dollars "to which may be added imprisonment in the county jail for any period not to exceed ninety days." The petitioner, the City of Huntington, attacks this penalty provision of the statute as unconstitutional, but the circuit court in declaring Section 7 unconstitutional and dismissing the petition from its docket did not pass upon the constitutionality of Section 13.

So we have before us on writ of error the questions whether said Section 7 is constitutional, and, if not, what is the effect of that section's unconstitutionality on the entire Act.

This Court in the case of *Danielley* v. *City of Princeton*, decided January 24, 1933, 113 W. Va. 252, 167 S. E. 620, held that Code, 16-11, before the 1933 amendment thereof, was unconstitutional and reversed the Circuit Court of Mercer County in overruling demurrers to the petition in that case. Code, 16-11-7, however, unlike the present Section 7, Acts of the Legislature, 1933, Chapter 6, provided that upon the hearing the circuit court "may hear and consider any pertinent and relevant evidence either party or any intrevener may offer, and shall determine all questions arising on the law and evidence and render such judgment or make such order upon the whole matter, as law and equity may require." But the statute, as then constituted, did not contain a severability clause. In the *Danielley* case this Court held that Section 7, as then enacted, in that it permitted the circuit court to "hear and consider any pertinent and relevant evidence" and to determine "all questions arising on the law and

evidence and render such judgment or make such order upon the whole matter, as law and equity may require", purported to delegate to the commission the power to hear evidence on a *de novo* basis and to determine all questions whether judicial, administrative, or, as the opinion states, "quasi judicial." It was because of the breadth of the purported powers, which the then statute vested in the commission and in the circuit court upon review, that this Court held Section 7 to be unconstitutional. True, the title to Chapter 14, Acts of the Legislature, 1929, is substantially the same as Code, 16-11, under consideration in the *Danielley* case, in that it provides, as does the title to Chapter 6, Acts of the Legislature, Regular Session, 1933, for. "the review" of the orders of the commission "by the courts". And both Acts in Section 7 thereof provide that "The supreme court of appeals of the state shall have jurisdiction to review the order [judgment, used prior to the adoption of the 1933 Act] of the circuit court upon application of either party or any intervener." Thus it seems that both Acts in the title thereof and in the language quoted from Section 7 of each indicates the legislative intent to vest in the circuit court the power to review the findings of the commission, but Section 7, in Code, 16-11, under appraisement in the *Danielley* case, purported to vest in the circuit court the power to determine all questions arising upon the commission's findings, even those which are purely administrative, a vice not contained in the statute presently under consideration.

We are of opinion that, in view of the absence of any provision in said Section 7, such as was contained in the original Section 7, for a hearing by the circuit court *de novo*, the title to the Act, which provides for "a review thereof [the orders of the commission] by the courts", read in connection with the provision of Section 7, which provides that this Court shall have jurisdiction to "review" the order of the circuit court, it is clear the Legislature intended to provide for a review by both the circuit court and this Court on the original record had before

the commission. It is significant that in the title the Legislature used the word "courts" instead of the singular form, and that the only two courts mentioned in Section 7 are the circuit court and this Court. If the review contemplated by Section 7 is that of judicial, as distinguished from administrative, questions, Section 7 is constitutional. *State v. Huber*, 129 W. Va. 198, 40 S. E. 2d 11; *Spurdone v. Shaw*, 114 W. Va. 191, 171 S. E. 411; but if the review contemplates, as did the original Section 7, the determination of administrative questions, to that extent at least Section 7 is unconstitutional. *State v. Huber, supra; Hodges v. Public Service Commission,* 110 W. Va. 649, 159 S. E. 834.

In construing ambiguity in a statute this Court will examine the title to an Act of the Legislature, as a means of ascertaining the legislative intent and the purpose of the legislation. *State ex rel. Holbert v. Robinson,* 134 W. Va. 524, 59 S. E. 2d 884; *Duling Bros. Co. v. City of Huntington,* 120 W. Va. 85, 196 S. E. 552, 555.

Section 7, as presently enacted, provides simply for a review or consideration by the circuit court upon the petition of the person cited by the commission on the record made and had at the hearing before the commission. Code, 16-11-7, which this Court in the *Danielley* case held unconstitutional in its entirety because it contained no severability clause and provided that, upon the hearing the circuit court "may hear and consider any pertinent and relevant evidence either party or any intervener may offer, and shall determine all questions arising on the law and evidence and render such judgment or make such order upon the whole matter, as law and equity may require." Thus, it may be seen that Section 7, as Judge Hatcher said in the opinion in the *Danielley* case, provided for a determination by the circuit court upon certiorari of all questions involved in the whole case, but in addition thereto the statute had the vice which is inherent in the statute under appraisement in the case of *Hodges v. Public Service Commission, supra,* in that it provided what is tantamount to a

trial *de novo,* or, as the opinion in the *Danielley* case states "an appeal with trial *de novo.*" Clearly in the *Hodges* and *Danielley* cases, the statute purported to vest in the circuit court jurisdiction to do everything which the Public Service Commission and the State Water Commission were required to do under the statutes considered in both these cases, which jurisdiction necessarily involved the exercise of administrative or legislative functions. So it is contended here that Section 7, as presently enacted, in that it provides that the circuit court shall by order "make a finding as to whether the act complained of is a statutory pollution", and that thereby the Legislature vainly tried to have the circuit court do the same thing and exercise the same executive functions as the State Water Commission in the first instance was required to do.

But the essential difference between Section 7, as originally enacted, and that section, as presently enacted, is that the original section, in that it provided for the taking of evidence, constitutes the circuit court as a tribunal to hear the case *de novo,* which was the vice inherent in the statute under appraisement, in the *Hodges* case. If that could be done constitutionally under the separation of powers provision, contained in Article V of the State Constitution, the Legislature could vest the circuit courts with jurisdiction in the first instance to determine whether there is a statutory pollution, which would present a case identical with the holding of this Court in the case of *State* v. *Huber, supra.* The statute, Sections 13, 14, 15 and 15 (b) of Article 16, Chapter 15, Acts of the Legislature, 1945, considered in the *Huber* case, attempted to confer original jurisdiction upon courts of record concurrent with that of the West Virginia Nonintoxicating Beer Commission, to revoke and suspend nonintoxicating beer licenses. The Court held that Sections 15 and 15 (b) of said Article 16, Chapter 15, are unconstitutional, in so far as they authorize courts of record, acting as courts of original jurisdiction, to revoke or suspend nonintoxicating beer licenses, and to hear and en-

tertain complaints relating to alleged violations of the nonintoxicating beer statute; and that orders entered by the Circuit Court of Fayette County, revoking the license of each of the defendants cited for violation in that case, were void. So in the *Huber* case, the circuit court undertook under the statute, just as the Nonintoxicating Beer Commissioner did, to pass on the revocation of beer licenses. The hearings in the *Hodges* and *Danielley* cases, being not only on the original record had before the two commissions, but on evidence taken and the hearing provided by the statute in both cases being *de novo,* these cases are not to be distinguished from the *Huber* case.

As heretofore indicated, Section 7, as presently constituted, does not provide expressly or by necessary implication for any trial *de novo*: it simply provides for a review of the findings of the State Water Commission that an act complained of is or is not "a statutory pollution". If, under the language of the present Section 7, we must say that the circuit court's only duty upon the hearing provided for by that section, was to determine whether there was or was not a statutory pollution, then we should say that Section 7 is violative of Article V of the West Virginia Constitution and void for that reason.

But this case presents a rather anamolous situation, for, if the order of the circuit court is allowed to stand, the City of Huntington is in the unenviable position, through no fault of its own or its council, of being without remedy, except by the indirect and somewhat cumbersome method of resorting to certiorari, in which case the scope of the judicial review is confined to the record as made in the subordinate tribunal. *Danielley* v. *City of Princeton, supra,* pages 254 and 255. Of course, if Section 7 should be held unconstitutional, in order to sustain the remainder of the Act, the petitioner would have the right to proceed by certiorari. Wherever by a dearth in a statute there is given no statutory right of review, the writ of certiorari is available in order to obtain judicial review of the findings of an administrative board. But

that is not the case we have before us. Section 7 does give a statutory right of review. *State ex rel. Board of Education* v. *Martin,* 112 W. Va. 174, 163 S. E. 850; *Quesenberry* v. *State Road Commission,* 103 W. Va. 714, 138 S. E. 362.

We should, if we can, interpret the statute in such a way as to render it constitutional. As this Court said in the case of *Meisel* v. *Tri-State Airport Authority,* 135 W. Va. 528, 546, quoting from the recent case of *Harbert* v. *The County Court of Harrison County,* 129 W. Va. 54, 70, 39 S. E. 2d 177: "It will be presumed that the Legislature intended to enact a valid, effective, and permanent statute." It is true that Section 7 contains some of the elements of uncertainty, but uncertainty or difficulty of interpretation does not of itself render a statute unconstitutional, and because the interpretation of this statute involves most difficult questions, we do not shirk from the responsible task of interpreting this Act so as to ascertain the legislative intent, and, at the same time, uphold the statute as constitutional, if a reasonable interpretation thereof will so permit. "A statute should not be declared invalid for uncertainty. There is no constitutional authority for such exercise of power * * *." 2 Sutherland's Statutory Construction, 3d Ed. 447.

Applying these rules of constitutional construction to the instant statute, and bearing in mind that the Legislature is presumed not to have enacted an unconstitutional Act, we do not interpret this statute as meaning to vest the circuit court with jurisdiction to determine whether there was a statutory pollution, because such interpretation would necessarily under the *Huber, Danielley* and *Hodges* cases, render Section 7 void. But the statute being remedial in its nature and enacted for the purpose of regulating and controlling stream pollution, should, as Section 15 provides: "Being for the public health, safety and welfare * * * be liberally construed to effectuate the purposes thereof." Such provision of the

statute will be given consideration and effect, as indicating the legislative purpose and intent. Though, in the final analysis, "the courts, not the Legislature, exercise final authority in the construction of statutes.", the legislative direction will be given consideration as indicative of the legislative intent. *State ex rel. Holbert* v. *Robinson, supra,* 532.

Interpreting the statute liberally, as we should, we are of opinion that it was the legislative intent that the circuit court on review may not pass on the question whether a statutory pollution existed, as the State Water Commission was required to do in the first instance; but the broad and liberal meaning of Section 7 discloses to us the legislative intent that upon a review having been had upon the petition of the City of Huntington, it was the duty of the circuit court under Section 7, as it would have to do in the event there had been no statutory review and certiorari had been invoked to ascertain whether the commission's finding that there was a statutory pollution, was based upon an abuse of its power, or that the commission exceeded its power, or exercised it in an arbitrary manner; and whether the Act, creating the commission, including Section 13, providing for penalties for noncompliance with the commission's order, is constitutional. If the finding of the commission is clearly wrong or against the preponderance of the evidence, the circuit court in the first instance, as this Court does, for instance, in cases coming from the Public Service Commission, set aside the finding, but whether the finding is wrong or against the preponderance of the evidence, the circuit court in the first instance must apply itself to that judicial task, for this Court will not in the first instance on appeal or writ of error from a circuit court pass on nonjurisdictional questions, not passed upon by the circuit court. 1 M. J., Appeal and Error, Section 242; *Duty* v. *Williamson Hudson-Essex Co.*, 109 W. Va. 147, 153 S. E. 248; *Bell* v. *Wayne United Gas Co.*, 116 W. Va. 280, 181 S. E. 609; *Davis* v. *Davis Trust Co.*, 113 W. Va. 43, 166 S. E. 690.

We therefore reverse the order of the Circuit Court of Cabell County, dated May 17, 1950, dismissing from the docket of that court the petition for an appeal by the City of Huntington, on the ground that Section 7 of the statute is unconstitutional, and remand this cause to the circuit court with directions that it pass on every constitutional and juridical question presented by the record before the State Water Commission, other than the question of the constitutionality of Section 7, which may be brought to the court's attention.

*Reversed.*