VIRGINIA ELECTRIC AND POWER COMPANY,

*a corporation,*

*v.*

CHARLES H. HADEN, II, *Tax Commissioner, etc.*

REVIVED IN THE NAME OF RICHARD L. DAILEY,

*Tax Commissioner, etc.*

(No. 13195)

Submitted January 24, 1973.     Decided July 24, 1973.

Rehearing Denied December 17, 1973.

*Chauncey H. Browning, Jr.,* Attorney General, *William F. Carroll,* Assistant Attorney General, for appellant.

*Jackson, Kelly, Holt & O'Farrell, Thomas N. Chambers, Geary & Geary, James Paul Geary, Hunton, Williams, Gay & Gibson, H. Brice Graves* for appellee.

CAPLAN, JUSTICE:

This is an appeal by Richard L. Dailey, Tax Commissioner of the State of West Virginia, successor to Charles H. Haden, II, from a final order of the Circuit Court of Grant County, dated June 22, 1971. The proceeding before that court was an appeal by Virginia Electric and Power Company from an administrative decision of the then Tax Commissioner. In said order the court held that Virginia Electric and Power Company, herein sometimes called the Power Company, or taxpayer, was not a manufacturer of electric power taxable under Code, 1931, 11-13-2b, as amended, and further, that it was not taxable as a producer of natural resource products under Code, 1931, 11-13-2a, as amended. The Power Company was taxable, held the court, under Code, 1931, 11-13-2d, as amended, with respect to the conduct of its electric power business measured by sales and demand charges. Furthermore, the court held that the sale of electricity, manufactured at its Mount Storm plant, to customers outside the state constitutes a transaction in interstate commerce and cannot constitutionally be taxed.

Virginia Electric and Power Company is a Virginia corporation, qualified to do business in West Virginia and North Carolina. It is a public utility which provides electric power to the public in parts of West Virginia,

Virginia and North Carolina. The area served by it in West Virginia consists of all or parts of the counties of Greenbrier, Monroe, Pocahontas, Raleigh and Summers.

Upon the application of the Power Company, the West Virginia Public Service Commission, by an order entered March 23, 1961, granted it a certificate of convenience and necessity to construct, maintain and operate a steam electric generating station on Stony River in Grant County, West Virginia, said station to be hereinafter referred to as the Mount Storm plant. This generating station was completed and the Power Company began its operations in 1965.

During the years 1965 and 1966 all of the electric power manufactured by the Power Company at Mount Storm was transmitted over transmission lines connecting with its transmission and distribution system in Virginia. This is the system that serves its utility customers in Virginia, West Virginia and North Carolina. The power sold to the West Virginia customers is returned to this state via its distribution system in Virginia.

In 1965 the Power Company sold 14.89% of the total electric power manufactured at Mount Storm to its West Virginia customers and the balance, 85.11%, to customers located outside the boundaries of this state. The sale of electricity by the appellee to customers outside the state were even greater in 1966. The record reveals that during that year, of the total production of the Mount Storm plant, 2.87% was sold to West Virginia customers and 97.13% went to outside customers.

In 1965 and 1966 the Power Company paid business and occupation tax on the gross amount derived from the electric power manufactured at Mount Storm and sold to its West Virginia customers, said tax having been paid at the rate prescribed in Code, 1931, 11-13-2d, as amended. Section 2d applied to public utilities engaged in the business of selling electricity within the state. For the same years the taxpayer failed to report or pay tax under

any section of Code, 1931, 11-13, as amended, upon the value of 85.11% and 97.13% of its Mount Storm production which was sold to consumers outside the state.

To facilitate its Mount Storm plant in the manufacture of electricity it became necessary to construct a cooling water reservoir. This was accomplished by impounding water of the Stony River with an earth and rock fill dam. In the construction of said dam, rock was quarried from the construction site of the power generating plant and incorporated into and made an integral part of said dam. The rock was quarried and transported to the dam site and incorporated therein by Garbart Construction Company, a subcontractor of George F. Hazelwood and Company, the main contractor for the construction of the Mount Storm Station. Thus, the Power Company caused the excavation and relocation of rock and stone upon its own property for use in the required dam. During the construction of this dam, which covered a period of two years, the appellee failed to report or pay any tax under Code, 1931, 11-13-2a upon the value of the stone quarried and produced upon its property and incorporated into said dam.

The Tax Commissioner, being of the opinion that the Power Company was subject to the payment of business and occupation tax under Code, 1931, 11-13-2b, as amended, and then in effect, as a manufacturer of electric power and under Code, 1931, 11-13-2a, as amended, and then in effect, as a producer of natural resource products, issued an assessment of business and occupation tax against said Power Company for the years 1962, 1963, 1964, 1965 and 1966. Thereafter, pursuant to Code, 1931, 11-13-7b, as amended, the appellee petitioned the Tax Commissioner for a reassessment of said tax and an administrative hearing thereon was held by the commissioner on November 1, 1967.

Subsequent thereto, the Tax Commissioner issued his administrative decision wherein he held that the Power Company was a manufacturer of electric power within

the meaning of Code, 1931, 11-13-2b, as amended, and as to that portion of electric power generated at Mount Storm not distributed in utility sales within this state, it was subject to business and occupation tax at the rate prescribed in said Section 2b. The Commissioner further held that, by reason of the aforesaid quarry operations, the Power Company was a producer of natural resource products, as contemplated by Code, 1931, 11-13-2a, as amended, and, as such, was subject to business and occupation tax at the rate prescribed in said Section 2a. His decision reduced the original assessment from $277,922.40 to $159,143.32 and imposed a penalty on the latter sum in the amount of $33,903.64.

Virginia Electric and Power Company appealed this administrative decision to the Circuit Court of Grant County, alleging, *inter alia,* that the Tax Commissioner had relied upon certain third party evidence to determine the value of the electric power manufactured and the rock quarried. The values used by the Tax Commissioner in arriving at his decision were determined by the state tax auditors. Being of the opinion that the Power Company's objection to the state's evidence was valid, the Tax Commissioner sought to withdraw his administrative decision and afford a full hearing for the purpose of permitting said company to offer further evidence in determining the aforesaid values. With this purpose in mind the Tax Commissioner filed a Plea in Abatement and Motion to Dismiss and Remand. The Power Company followed by filing a "Motion to Strike that Certain Pleading of the Defendant's Entitled 'Plea in Abatement and Motion to Dismiss and Remand'".

The circuit court, by order entered December 31, 1969, denied the Tax Commissioner's Plea in Abatement and Motion to Dismiss and Remand, ruling that no order of the court was needed to perfect the appeal and that the purported withdrawal by the Tax Commissioner of his administrative decision did not oust the court of jurisdiction. Also, the court ruled that it did not have

authority to remand the case to the Tax Commissioner for further administrative proceedings. After additional pleadings were filed and upon further consideration, the circuit court, on June 22, 1971, entered the order from which this appeal is prosecuted.

As is evident from the foregoing, the basic questions to be resolved on this appeal are: (1) Is Virginia Electric and Power Company a manufacturer of electricity under Code, 1931, 11-13-2b, as amended, and if so, can the tax at the rate prescribed in Section 2b be imposed on all electricity generated and sent out of the state via its transmission system in Virginia, or would such tax constitute a burden on interstate commerce? (2) Is Virginia Electric and Power Company a producer of natural resource products as contemplated by Code, 1931, 11-13-2a, as amended, and, as such, subject to the tax prescribed by that Code Section?

Additional questions, procedural in nature, have been raised. First, may the Tax Commissioner withdraw his administrative decision after an appeal therefrom has been perfected to a circuit court and thereby require the circuit court to remand the case to said commissioner for further proceedings; and, second, was the appeal properly filed in the circuit court? As to the second procedural question, this appeal is statutory, it having been taken as provided in Code, 1931, 11-13-8, as amended. Wherein that statute is pertinent it provides "The appeal shall be taken by written notice to the tax commissioner and served as an original notice. When said notice is so served it shall, with the return thereon, be filed in the office of the clerk of the circuit court and docketed as other cases with the taxpayer as plaintiff and the tax commissioner as defendant." This appeal is afforded as a matter of right and "It is the general rule that every state may, within its constitutional authority, prescribe the manner in which its courts shall acquire jurisdiction * * * and where the mode of acquiring jurisdiction is prescribed by statute compliance therewith is essential or the

proceedings will be a nullity * * *." 21 C.J.S., *Courts,* Section 80. We are in agreement with this rule and find that the Power Company, having complied with the requirements of the statute, properly filed its appeal in the Circuit Court of Grant County.

In relation to the first procedural question, the Tax Commissioner asserts that in the circumstances of this case he had a right to withdraw his administrative decision. Reiterating briefly these circumstances, the record reveals that the Tax Commissioner based his decision, as to values, only upon the evidence of the state tax auditors. When the Power Company complained that it was denied administrative due process of law in that it was not afforded an opportunity to offer evidence as to the value of the electric power generated and of the rock quarried for the dam, the Tax Commissioner sought to withdraw the subject administrative decision in an attempt to rectify this wrong. The taxpayer resisted the commissioner's motion and the court held that it had no authority to remand the case to the Tax Commissioner for further consideration and refused the Tax Commissioner's request.

The present posture of this case makes the position taken by the Power Company incongruous. It complained of not having had the opportunity to offer evidence of values but when that opportunity was afforded, it resisted the motion which would permit it to avail itself of such opportunity. The only evidence of such values before the court was that offered by the Tax Commissioner. In view of the language of Code, 1931, 11-13-8, as amended, and of its interpretation by this Court in *Walter Butler Building Company v. Soto,* 142 W.Va. 616, 97 S.E.2d 275, the case must be decided as to values on the evidence before it. The following language of said statute is pertinent: "The court shall hear the appeal and determine anew all questions submitted to it on appeal from the determination of the tax commissioner."

Commenting on the part of Section 8 quoted immediately above, the Court, in *Walter Butler Building Company v. Soto, supra,* noted that the primary purpose of the Legislature in enacting such provision was to permit judicial review and determination of the validity of the tax commissioner's ruling and to afford the taxpayer a method of procedure whereby the correctness of such ruling could be presented and judicially determined. The Court then said: "* * * that provision of the section is construed to mean that the court on appeal is empowered to hear and determine only judicial questions which result from the determination of the State Tax Commissioner and that the court is not empowered to hear and determine administrative or other nonjudicial questions." See also *Sims v. Fisher,* 125 W.Va. 512, 25 S.E.2d 216; *Danielley v. The City of Princeton,* 113 W.Va. 252, 167 S.E. 620; and *Hodges v. Public Service Commission,* 110 W.Va. 649, 159 S.E. 834.

We deduce from the above-quoted language and from the cited authorities that a hearing and determination anew, as provided in said Section 8, means that the circuit court shall make a judicial determination of the correctness of the administrative decision, but that it does not permit such court to receive new evidence in making a determination of the issue. To allow the circuit court to determine an issue on evidence not considered at the administrative hearing would cast the court in the role of performing an executive function. Under the acknowledged principle of separation of powers this cannot be permitted. Thus, the circuit court must decide the case on the evidence in the record as it was received or it must return the case to the Tax Commissioner for the further presentation of evidence on values.

We realize that due to the holding of the circuit court the issue of values was not reached in that proceeding. However, should this Court reverse the judgment of the circuit court a determination of the value of the electricity generated at the Mount Storm plant and of the rock used in the dam would have to be made upon remand.

While we are not cognizant of any principle of law or authority which would permit the Tax Commissioner, as a matter of law, to withdraw his administrative decision and thereby oust the circuit court of its jurisdiction, we are of the opinion and so hold that the court in its inherent powers has the authority in the circumstances described above to remand the case to the Tax Commissioner for the taking of further evidence. As expressed in 20 AM. JUR. 2d, *Courts*, Sections 78 and 79, courts have inherent power to do all things that are reasonably necessary for the administration of justice within the scope of their jurisdiction. In the instant case justice dictates that the taxpayer be afforded an opportunity to offer its evidence as to values and that the court be empowered, if the circumstances warrant, to remand the case so that this opportunity may be afforded.

Bringing into focus the issues on the merits of the instant case, is the order of the circuit court dated October 3, 1970 which defined such issues as follows: "* * * whether the plaintiff is taxable as a manufacturer of electric power under Section 2b, Article 13, Chapter 11 of the Code of West Virginia, and whether the plaintiff is taxable as a producer of stone within the meaning of Section 2a, Article 13, Chapter 11 of said Code." As heretofore noted, the court held that the power company was not subject to the tax prescribed in either of the aforementioned statutes.

The statute in issue in relation to the manufacture of electricity, Code, 1931, 11-13-2b, as amended, provides:

> "Upon every person engaging or continuing within this State in the business of manufacturing, compounding or preparing for sale, profit, or commercial use, either directly or through the activity of others in whole or part, any * * * or electric power not produced by public utilities taxable under other provisions of this article, the amount of the tax to be equal to the value of the article, * * * or electric power manufactured, compounded or prepared for sale, as shown by the gross proceeds derived from the

sale thereof by the manufacturer or person compounding or preparing the same, except * * *. The measure of this tax is the value of the entire product manufactured, compounded or prepared in this State for sale, profit or commercial use, regardless of the place of sale or the fact that deliveries may be made to points outside the State. * * *"

It is the position of the taxpayer that under the language of the above-quoted statute "electric power not produced by public utilities taxable under other provisions of this article" it is excluded from such taxation. It asserts that as it is taxed under Section 2d of the said chapter and article as a public utility, it cannot be taxed under Section 2b as a manufacturer of electric power. The taxpayer further asserts that the business and occupation tax is by statute a tax levied for the privilege of engaging in business in West Virginia and that the privilege exercised by it is that of a public utility business, taxable only under said Section 2d.

It is the position of the Tax Commissioner that Virginia Electric and Power Company, for the years in issue, was properly taxed under Code, 1931, 11-13-2d, as amended, upon that portion of electric power which it generated and sold within this state as a public utility; and that it was further subject to taxation as a person engaged in the business of manufacturing electric power under the provisions of Code, 1931, 11-13-2b, as amended, upon the value of electricity generated within this state and sold and delivered to points outside of West Virginia. The Tax Commissioner asserts that the Power Company enjoys two separate and distinct privileges, each of which is taxable under the provisions of the business and occupation tax statute; that it not only serves the public as a public utility but that it also engages in the business of the manufacture of electric power.

The effect of the holding of the circuit court is that, inasmuch as the taxpayer is subject to business and occupation tax as a public utility under Code, 1931, 11-13-

2d, as amended, it cannot be taxed under Section 2b of that article as a manufacturer of electric power. Furthermore, the court held that the *sale* of electric power produced by the Power Company at its Mount Storm facility and *sold* outside of this state is a transaction in interstate commerce, that the gross income derived therefrom is specifically exempt from the tax prescribed in Section 2d and that such power sold outside the state "cannot constitutionally be taxed."

There is nothing in the business and occupation tax statute, nor is there any principle of law, of which we are cognizant, which precludes the imposition of more than one tax upon a person who is engaged in different business activities, as catagorized in Code, 1931, 11-13-2a through 2j, as amended. Expressly recognizing this proposition, the Court, in *United Fuel Gas Co. v. Battle*, 153 W.Va. 222, 167 S.E.2d 890 (1969), unequivocally held that a public utility may be taxed under more than one provision of the business and occupation tax statute. In that case the Court sanctioned the taxability of United Fuel Gas Company as a producer of natural gas under Code, 1931, 11-13-2a, as amended, as a wholesaler of natural gas under Section 2c and as a public utility under Section 2d. See *J. D. Moore, Inc. v. Tax Commissioner*, 147 W.Va. 611, 129 S.E.2d 722 (1963).

The Court, in the *United Fuel* case, in determining whether said company could be taxed as a producer of natural gas, said: "It is the production of gas, not its ownership, which is subjected to taxation under Section 2a. The value of gas produced is its value when production ends which in this instance is at the well." That reasoning is clearly applicable to the instant case. Here, it is the activity or business of manufacturing electric power, not its sale, which is subject to taxation under Section 2b. We agree fully with the learned trial judge in his holding that electric power produced in this state and sold outside of its boundaries is a transaction in interstate commerce. However, as aforesaid, the tax imposed under Section

2b is a tax on the manufacture of electric power and does not purport to tax the sale of electric power generated here and sold outside the state.

The tax sought to be imposed and collected in this case is a business and occupation tax. This is a tax on the privilege of doing business, the gross proceeds of said business being used as a measure of the tax. Section 2 of Chapter 11, Article 13 of the Code provides; "There is hereby levied and shall be collected annual privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined by the application of rates against values or gross income as set forth in sections two-a to two-j, inclusive, of this article." The Power Company admittedly is a public utility, taxable under Section 2d. It is taxable thereunder, only as a public utility, however, and only on that portion of its generated electric power sold to its utility customers in this state. No tax was imposed under Section 2d on the electric power manufactured at Mount Storm and sold without the state. The electric power manufactured in this state for sale in other states was not taxed under any provision of Article 13 of Chapter 11 of the Code.

Succinctly stated, Virginia Electric and Power Company is engaged in more than one business activity. It is a public utility wherein it supplies electricity to the public and, as such, is taxable under Code, 1931, 11-13-2d, as amended. Wherein it generates electric power at Mount Storm, it is a manufacturer under Section 2b and is subject to the tax applicable to the category described therein. Under that Code section "The measure of this tax is the value of the entire product manufactured * * * for sale, profit or commercial use, regardless of the place of sale or the fact that deliveries may be made to points outside the State. * * *" As stated, the tax imposed under Section 2b is upon the manufacture of electric power and not upon its sale.

Having decided that the manufacture of electric power, on the basis of its value at the place of manufacture, is

properly taxable under Section 2b, consideration must be given to the taxpayer's contention that the imposition of such tax constitutes an unlawful burden on interstate commerce. Reference is made by the taxpayer, of course, to the manufactured electric power transmitted outside the state. The manufacture of electricity and its transmittal or sale are readily distinguishable. Manufacturing is a local activity and is not a part of interstate commerce. Commerce does not begin until the manufacture is finished. *Utah Power & Light Co. v. Pfost,* 286 U.S. 165, 52 S. Ct. 548, 76 L. Ed. 1038 (1932).

In *Utah Power & Light Co., supra,* the state imposed and sought to collect a license tax on the generation of electricity, even though such electricity was transmitted to an out of state consumer. It was contended that the imposition of such tax was unconstitutional as a burden on interstate commerce. The Court rejected this contention, holding that "As commerce does not begin until manufacture is finished, the commerce clause of the Federal Constitution does not prevent a state from exercising exclusive control over manufacture." See also *Crown Zellerback Corporation v. State,* 45 Wash. 2d 749, 278 P.2d 305 (1954).

The Power Company, relying on the decision rendered by this Court in *Appalachian Electric Power Company v. Koontz,* 138 W.Va. 84, 76 S.E.2d 863 (1953), asserts that its activity of generating electricity is a part of its operation as a public utility; that such electricity is therefore produced by a public utility, and as aforesaid, not a proper subject of the tax imposed under Section 2b; that the only measure of tax under Section 2d is on the income received by the company from sales and demand charges; that such measure is not applicable to the generation of electricity; and that the only tax to which it is subject is that under Section 2d, the measure thereof, being the income received from sales and demand charges.

The Court, in the *Appalachian Power* case, *supra,* held that the tax levied against an electric power company under Section 2d was determined solely by the amount of income it received from sales and demand charges and that such income relates only to that derived from public services furnished; that the sale of electrical appliance products, in which Appalachian was engaged, was only incidental to the public service business; and that the income from the sale of appliances was not income based on sales and demand charges. Consequently, the Court concluded, the latter sales could not be taxed under any section of Code, 1931, 11-13-2, as amended.

The effect of the taxpayers assertion here is that the generation of electricity in the instant case is analogous to the sale of electrical appliances in the *Appalachian Power* case, *supra.* It argues that such activity is incidental to and in furtherance of the public service business; that, as such, the income therefrom is not income received from sales and demand charges; that sales and demand charges constitute the only base for taxation under Section 2d; and that since generation of electric power is a part of the utility business it is not taxable under any other provision of the statute.

We are compelled to disagree with these assertions of the taxpayer. Subsequent to the decision in the *Appalachian Power Company* case, *supra,* the Legislature, in 1955, amended Section 2d, Article 13, Chapter 11 of the Code by adding the following language:

> "The measure of the tax under this section shall include only gross income received from the supplying of public services. The gross income of the taxpayer from any other activity shall be included in the measure of the tax imposed upon the appropriate section or sections of this article."

In view of our holding, hereinbefore expressed, that Virginia Electric and Power Company is operating two separate and distinct business activities, the last sentence

of the above-quoted amendment of Section 2d clearly makes the *Appalachian Power Company* case, *supra,* distinguishable. As expressed in 73 C.J.S., *Public Utilities,* Section 9, "The fact that a business or enterprise is, generally speaking, a public utility does not make every service performed or rendered by it a public service, with the consequent duties and burdens, but it may act in a private capacity as distinguished from its public capacity, and in so doing is subject to the same rules as a private person."

Concisely stated, the Power Company is engaged in two business activities—the generation of electric power and the public utility business. The latter is taxed under Section 2d. The former cannot be taxed thereunder by reason of the measure of tax used therein. Under the amendment of Section 2d, quoted above, however, the tax "shall" be imposed under the appropriate section of the subject article, namely under Section 2b thereof as a manufacturer of electric power.

We cannot subscribe to the view of the taxpayer wherein it contends that it is engaged primarily in the public utility business in this state and that the generation of electric power is merely incidental thereto and in furtherance thereof. This is an apparent effort to bring it within the holding of the *Appalachian Power Company* case, *supra.* In that case the sale of electrical appliance products was a minute part of the company's income. In the instant case, of the electric power produced at the Mount Storm facility in 1965, 85.11% was transmitted outside the state and 14.89% was sold to customers in West Virginia. During the year 1966, 97.13% of the manufactured electricity was transmitted outside the state by the Power Company and 2.87% was sold to its domestic customers. Do these figures permit the conclusion that the generation or manufacture of electric energy at Mount Storm is a mere incident of the taxpayer's utility business? Certainly not. To so conclude would allow the "tail to wag the dog."

For the reasons stated above, we find that Virginia Electric and Power Company is subject to the tax imposed under Code, 1931, 11-13-2b and 2d, as amended, as a manufacturer of electric power and as a public utility respectively.

Holding that Virginia Electric and Power Company was not taxable as a producer of natural resources under the provisions of Code, 1931, 11-13-2a, as amended, the trial court noted, "with respect to the issue of producing stone that Plaintiff entered into a contract with the George F. Hazelwood Company for the alteration and improvement of real property, within the definition of 'contracting' as used in Code 11-13-1, rather than the production for sale, profit or commercial use of stone within the meaning of 11-13-2a, and that this being a single transaction and not a continuous course of conduct or dealing, it is a casual or isolated transaction rather than the exercise of a taxable privilege under Article 13, Chapter 11 of the Code of West Virginia." We are in full agreement with the learned trial judge wherein he held that this activity of the Power Company is not subject to such tax.

The business and occupation tax, imposed by Code, 1931, 11-13-2, as amended, is a tax on the privilege of doing business in this State, the rates thereof being those designated in Sections 2a to 2j, inclusive, of said article. Section 2a provides: "Upon every person engaging or continuing within this State in the business of producing for sale, profit or commercial use any natural resource products, the amount of such tax to be equal to the value of the articles produced as shown by the gross proceeds derived from the sale thereof by the producer, except as otherwise provided * * *."

A careful examination of the activities of the taxpayer with regard to the provisions of Section 2a reveals, in our opinion, that it in nowise was engaged "in the business of producing for sale, profit or commercial use any natural resource products." The Power Company contracted to have the Mount Storm plant constructed. In the

construction thereof, rock and stone were removed from one part of its property and placed in another part to impound water to facilitate the generation of electricity. This was a casual or isolated transaction and is not taxable as a business activity.

In expressing the above opinion we are fully aware of the language contained in Section 2, which provides that a "person exercising privileges taxable under the other sections of this article, producing * * * natural resource products * * * and using and consuming the same in his business, shall be deemed to be engaged in the business of * * * producing * * * natural resource products for sale, profit or commercial use * * *." Furthermore, we do not hold that the sale of a natural resource product is the test of the taxability of such activity under Section 2a. However, a reading and consideration *in pari materia* of the above-quoted language of Section 2 and the definitions of "business" in Section 1, leads us to the firm conviction that this activity is not taxable under Code, 1931, 11-13-2a, as amended.

The Tax Commissioner relies on the above-quoted language of Section 2 and cites in support of his contention the decision of this Court expressed in *Owens-Illinois Glass Company v. Battle,* 151 W.Va. 655, 154 S.E.2d 854 (1967).

In that case, Owens-Illinois Glass Company and Libbey-Owens-Ford Glass Company severally operated manufacturing plants in Kanawha and Cabell Counties and were jointly engaged in the production of natural gas for use in the operation of their respective manufacturing plants. The taxpayers did not therein seek to avoid the payment of tax, under Section 2a, on the quantity of gas used in the manufacture of their products. They sought a refund only of the business and occupation taxes paid on the volume of the gas which was used and consumed in the process of producing gas. Denying such refund, the Court held that the production of natural gas used and consumed by the taxpayers in the process of

producing natural gas for their manufacturing plants was taxable at the rate prescribed by Section 2a.

We agree with and adhere to that decision, but find it distinguishable from the instant case. In *Owens-Illinois* there was a constant and continuing need for the production of the natural gas in question, which need would continue so long as the whole quantity of natural gas produced was used in the manufacturing process. As expressed by the Court in that case, the taxpayers were liable for the payment of such tax on the basis of the "gross volume of gas produced by them for the purpose of facilitating and promoting the operation of their manufacturing plants." This language, together with the Court's words "used *and* consumed" (emphasis supplied), and the words of Section 2, "using *and* consuming the same in his business" (emphasis supplied), clearly contemplates, in our opinion, that the production of a natural resource for use in one's business activities, to be taxable at the rate prescribed in Section 2a, must be undertaken on a continuous basis.

In *Owens-Illinois* the production of gas in question was necessarily undertaken on a continuous basis. On the other hand, the removal of rock and stone in the instant case to another site on the taxpayer's property constituted a single isolated activity. The fact that such rock and stone form a part of the dam used to facilitate the generation of electricity does not bring it within the contemplation of the words "using and consuming the same in his business." We affirm this holding of the trial court.

For the reasons stated herein, the judgment of the Circuit Court of Grant County is reversed wherein it was held that Virginia Electric and Power Company was not subject to the payment of the business and occupation tax imposed by Code, 1931, 11-13-2, as amended, at the rates prescribed in Section 2b thereof. Wherein, however, it was held that the taxpayer was not subject to the payment of business and occupation tax as a producer

of natural resource products, said judgment is affirmed, and the case is remanded for further proceedings in accordance with the principles enunciated in this opinion.

Justice Haden, deeming himself disqualified, did not participate in the consideration or decision of this case.

*Affirmed in part; reversed in part; remanded for further proceedings.*