JOHN JOHNSON

*v.*

STATE COMPENSATION COMMISSIONER *et al.*

(No. 9764)

Submitted October 2, 1945.   Decided October 16, 1945.

38

*James J. Jeter, Jr.,* for appellant.
*Scherer, Bowers & File,* for appellee.

RILEY, JUDGE:

Claimant, John Johnson, appeals from an order of the Workmen's Compensation Appeal Board affirming an order of the Workmen's Compensation Commissioner, refusing to reopen his case under Code, 23-5-1, as amended and reenacted by Chapter 137, Acts, West Virginia Legislature, 1939, Article 5, Sections 1(a) and 1(b).

On July 10, 1942, claimant was injured in the course of and as a result of his employment in a mine of Lillybrook Coal Company. His injury was first reported as a left inguinal hernia, but later as a right indirect hernia and a left direct hernia. For a time, because he was not considered a good operative risk, he was carried on a total temporary disability basis. Later examining physicians recommended that the hernias could be safely reduced by a radical operation. Claimant, being reluctant to submit thereto, was referred to Dr. Ball of Charleston, who gave him twenty-one injection treatments, commonly known as the ambulatory method of treatment. He was then referred to Dr. Halloran of the Raleigh General Hospital for the purpose of determining whether a cure had been effected by the injections, and for his recommendation as to what degree, if any, of permanent partial disability claimant had. On December 22, 1943, Dr. Halloran reported that he found "bulging in right inguinal region due to general weakness of structures through this area. *There is no in-*

*direct hernia noted. The ring has become small. The left side presents a fairly normal appearance, and no hernia noted."* (Italics supplied.) The report further showed that "The claimant is suffering with a hypertensive vascular condition, and it is largely because of his physical condition generally that he remains unable to return to work". Dr. Halloran recommended a thirty per cent permanent partial disability rating, but it is to be noted that his finding as to claimant's disability and his recommendation are based upon claimant's physical condition as it appeared to him after the injection treatment had been given. On the basis of Dr. Halloran's report the commissioner, on December 29, 1943, made an award of thirty per cent permanent partial disability. To this finding claimant protested and demanded a hearing. Later he withdrew his request for a hearing; and on January 19, 1944, the commissioner entered an order affirming the award of thirty per cent. The last payment under this award was on October 27, 1944.

On December 9, 1944, a petition for reopening was filed, supported by the report of Dr. R. W. Chambers of Beckley. Dr. Chambers reported that claimant had a far-advanced case of "arterio sclerosis and hypertension which would make him a poor operative risk." This doctor recommended that claimant be paid the maximum amount for "bilateral hernias, as he is totally disabled from doing manual labor due to other physical defects." On December 15, 1944, the commissioner advised claimant, by letter, that he had not made a proper showing for reopening. This letter further advised claimant that "if you do not desire to appeal at this time and desire to present evidence in accordance with Section 1-A, Article 5, Chapter 23 of the Code to the effect that there has been a progression or aggravation in your condition, or submit some fact or facts not considered by the Commissioner in his former findings, such evidence will be carefully reviewed and a further ruling made thereon, if submitted within the statutory period." Later, on

March 17, 1945, claimant applied again for reopening and submitted the report of Dr. J. M. Coram of Beckley, dated March 7, 1945. This report stated, in part, that claimant had high systolic and diastolic blood pressure, and that he "is too poor a surgical risk to merit repair of his hernia." The report further stated: *"Abdomen: Lower abdomen there are tender inguinal glands on the left side. Indirect inguinal hernia on the rt. side which is reducible."* (Italics supplied.) On March 22, 1945, the commissioner notified claimant that he had failed to make a proper showing for reopening. An appeal was taken to the appeal board, which affirmed the finding of the commissioner.

This case is governed by the provisions of Code, 23-4-6, as amended by Chapter 137, Acts, West Virginia Legislature, 1939, and Code, 23-4-7. Section 7 provides:

"(7) Hernia. - * * * In case the injured employee refuses to undergo the radical operation for the cure of said hernia, no compensation will be allowed during the time such refusal continues. If, however, it is shown that the employee has some chronic disease, or is otherwise in such physical condition that it is considered unsafe for him to undergo such operation, he shall be paid as provided in section six."

Section 6, referred to above, provides for a schedule of compensation. Subsection (c) thereof provides for award for permanent partial disability based on various percentages of disability to total disability; subsection (d) provides a table of percentages of disability, where the injury results in the total loss by severance of the members of the body named in that subdivision; subsection (f) provides: "The award for permanent disabilities intermediate to those fixed by the foregoing schedule and permanent disability of from two per cent to eighty-five per cent shall be in the same proportion and shall be computed and allowed by the commissioner"; and, subsection (g) provides: "The percentage of all

permanent disabilities other than those enumerated in subdivisions (c), (d), (e), and (f) of this section shall be determined by the commissioner, using as a basis the loss of an arm at or above the elbow, and award made in accordance with the schedule in subdivision (c)."

In the appraisement of this case we note that Dr. Halloran's report was based upon claimant's condition after claimant had been given the injection treatment. Dr. Halloran did not take into consideration, as provided by Code, 23-4-7, whether claimant "has some chronic disease, or is otherwise in such physical condition that it is considered unsafe for him to undergo such [radical] operation." In our opinion the injection treatment was not a radical operation within the meaning of Section 7. Dr. Halloran found no hernia existing. Dr. Ball's treatment evidently gave claimant temporary relief. On the applications for a reopening it appears that the hernias have reappeared, and that they cannot be repaired by radical operation because of claimant's physical condition. This case, in our opinion, merits a reopening under Code, 23-5-1, as amended and reenacted by Chapter 137, Acts, West Virginia Legislature, 1939, Article 5, Sections 1(a) and 1(b), because upon the applications for reopening there clearly appears a progression or aggravation in claimant's condition since his examination by Dr. Halloran and the award based thereon; and in addition the record upon the applications for reopening discloses that claimant had hernias which could not safely be cured by a radical operation, a fact not considered by the commissioner in his former findings.

Inasmuch as Code, 23-4-6, as amended by Chapter 137, Acts, West Virginia Legislature, 1939, provides for compensation for hernia which cannot be reduced by radical operation on the basis of the loss by severance of a member of the body, the fact that claimant may have a disability caused by arterio sclerosis and hypertension in an advanced stage does not prevent him from recovering the benefits provided by said Section 6.

For the foregoing reasons the orders of the appeal board and compensation commissioner are reversed.

*Reversed.*