JOHN TATE

*v.*

STATE COMPENSATION DIRECTOR, AND
UNITED STATES STEEL CORPORATION, A CORP.

(No. 12358)

Submitted September 2, 1964.   Decided November 10, 1964.

HAYMOND, JUDGE, not participating.

*Dayton, Campbell & Love, George W. S. Grove, Jr.,* for appellant.

*Patrick J. Flanagan,* for appellees.

BERRY, JUDGE:

The employer, United States Steel Corporation, appeals from an order of the Workmen's Compensation Appeal Board entered on May 15, 1964, affirming an order of the State Compensation Director entered on January 24, 1964, by which the claimant was awarded permanent total dis-

ability for life. Upon application to this Court an appeal was granted on July 13, 1964.

The claimant, John Tate, was injured in a slate fall while working as a roof bolter in the employer's mine on February 28, 1956. As a result of this mine accident, the claimant received severe injuries consisting of laceration and tearing of the posterior urethra, fracture of the pelvis, hematoma of the left arm and thrombophlebitis of the left leg. The claimant was awarded 25% permanent partial disability on December 10, 1957, to which award he entered a protest. After hearings which were held and upon recommendations of doctors of 35% and 40% awards of permanent partial disability, the claimant was awarded 35% permanent partial disability on December 3, 1958. No protest or appeal was filed to this award.

Upon application timely filed to reopen the claim for progression or aggravation, or new facts, the claim was reopened, and upon the recommendations contained in reports of doctors recommending an increase in the permanent partial disability to the claimant, 50% permanent partial disability was awarded to him on June 22, 1960, to which award a protest was entered by both the employer and the claimant. The claimant contended that he was permanently and totally disabled and should receive lifetime disability award, while the employer contended that his permanent partial disability should remain 35% heretofore awarded, because no progression or aggravation or any new facts had been disclosed which would warrant a change in the award. Hearings on these protests were held at numerous places during a period of four years after which the Director awarded permanent total disability for life to the claimant. This award was affirmed by the Workmen's Compensation Appeal Board.

The only issue involved in this appeal is whether or not there was any evidence of progression or aggravation of the claimant's injuries, or any new facts disclosed that were not considered at the time the award of 35% permanent partial disability was made to the claimant in 1958. The 35% permanent partial disability awarded to the claimant in 1958

was based on examinations and reports of Dr. Russell Kessel, Dr. R. R. Raub, Dr. M. M. Ralsten and Dr. Harold H. Kuhn. Dr. Kessel and Dr. Raub recommended 35% permanent partial disability. Dr. Ralsten reported that he should have more disability awarded but did not make any specific recommendation. Dr. Kuhn recommended 40% permanent partial disability. These doctors indicated that although he was not permanently disabled it was questionable as to whether or not he would be able to resume his work in the mines at his former job.

In January 1959, without application having been made to or authorization being given by the Workmen's Compensation Department, the claimant underwent surgery to relieve pains in his back. Temporary relief was afforded as a result of the operation but discomfort returned after several months. The record indicates that there was a controversy as to whether the claimant's back difficulty was related to the accident. Dr. Kessel, in his report, stated that the claimant had osteoarthritis of the back which, in his opinion, was present before the accident.

The claimant was examined by Dr. L. Z. Wright and Dr. Wright's report of January 12, 1960 was the basis on which the claim was reopened on the grounds of progression and aggravation. Dr. Wright, in his report, stated that the claimant would never be able to pass an examination for work in the mines or to perform any other hard labor, further stating that in his opinion he should have a 90% permanent partial disability award.

The claimant was referred to Dr. George R. Callender, Jr. for a physical examination and on May 31, 1960 Dr. Callender agreed with Dr. Wright that claimant had considerable disability but not to the extent stated by Dr. Wright. It was Dr. Callender's opinion that claimant had a 50% permanent partial disability.

During the hearings conducted over the four year period, after protest had been made to the award of 50% disability, Dr. R. R. Raub, who had previously examined the claimant in 1958, examined him again and on October 4, 1960 stated

that the condition of the claimant was the same as when he last saw him, and that he was not totally disabled, and that furthermore he was still of the opinion that claimant had a 50% disability. However, in his prior report he had recommended only a 35% permanent partial disability award to the claimant, although in the meantime, upon reopening of the claim, an award of 50% had been made by the Commissioner. Dr. M. M. Ralsten examined the claimant again at the request of the employer and on October 18, 1960 reported that his physical findings were "about" the same as previously made but that the claimant had less flexibility in the back. He recommended that he should have permanent total disability, stating that he "believed" the claimant would not be able to return to gainful employment if he could not be relieved by surgery.

Dr. E. L. Gage examined the claimant and on February 1, 1961 stated that he should have 50% permanent partial disability. Dr. C. W. Stallard examined the claimant on April 23, 1963. Dr. Stallard reported that claimant was totally and permanently disabled and he would not recommend further surgery.

It is true that under the law applicable to the case at bar, Code, 23-5-1b, and the decided cases relative thereto, a claimant seeking additional compensation must show progression or aggravation or some other facts not theretofore considered before any new award can be made to him, even though he was not fully compensated for his disabilities in the prior award. *Blevens* v. *State Compensation Commissioner,* 127 W. Va. 481, 33 S. E. 2d 408; *Igo* v. *State Compensation Commissioner,* 128 W. Va. 402, 36 S. E. 2d 690; *Eady* v. *State Compensation Commissioner,* 148 W. Va. 5, 132 S. E. 2d 642. However, the case presented here does not fall within the decisions of this Court with regard to the showing of progression or aggravation. In the *Blevins, Igo* and *Eady* cases the evidence of the doctors who had previously examined the claimants was to the effect that there was no physical change in the claimants' condition from the previous examination and that no new facts were presented that had not been previously considered in the prior awards. In

all of these cases prior examinations upon which the awards were based indicated that the claimants were permanently and totally disabled although the claimants had not been given such award. In the instant case, although some of the doctors indicated in their prior examinations that the claimant might not be able to return to his former job in the mine, they were also of the opinion that he had only a 35% permanent partial disability. In the later examinations, after the case had been reopened, all of these doctors, with perhaps the exception of one, whose report is not clear as to whether or not he was in error, indicated that the claimant had additional disability and recommended additional permanent partial disability. Then, too, most of the doctors stated that claimant was now permanently and totally disabled which had not been reported or recommended previously other than as a possible outcome of his condition. One of the employer's doctors, Dr. M. M. Ralsten, stated that his physical findings were "about" the same as previously made but that the claimant had less flexibility in his back. This within itself would indicate progression and aggravation.

The Workmen's Compensation Appeal Board is a fact finding body and unless its findings are plainly wrong they will not be disturbed by this Court. *Burgess* v. *State Compensation Commissioner*, 121 W. Va. 571, 5 S. E. 2d 804; *Vento* v. *State Compensation Commissioner*, 130 W. Va. 577, 44 S. E. 2d 626; *Walk* v. *State Compensation Commissioner*, 134 W. Va. 223, 58 S. E. 2d 791; *Eady* v. *State Compensation Commissioner*, 148 W. Va. 5, 132 S. E. 2d 642.

This matter is clearly stated in the first point of the syllabus in the *Vento* case, in the following language: "In order to reverse a finding of fact by the Workmen's Compensation Appeal Board it must appear from the proof upon which the board acted that the finding in question was plainly wrong."

The case of *Johnson* v. *State Compensation Commissioner*, 128 W. Va. 37, 35 S. E. 2d 677, clearly indicates that the finding of the Director and the State Compensation Appeal Board in this case should be affirmed. We are, therefore, of the opinion that under the facts presented to us in this

instance that the finding of the Workmen's Compensation Director and the Workmen's Compensation Appeal Board based on the facts contained in the record are not plainly wrong and should be affirmed.

*Affirmed.*