MOUNTAIN TRUCKING COMPANY, *a corporation, et al.*

*v.*

CLINTON DANIELS, *et al., and*
THE PUBLIC SERVICE COMMISSION OF WEST VIRGINIA

(No. 13270)

Submitted May 1, 1973.          Decided July 17, 1973.

*Hanna & Ross, Homer W. Hanna, Jr., Alexander J. Ross,* for petitioners.

*Phillip C. Duff,* Legal Division, for Public Service Commission.

CAPLAN, JUSTICE:

This is an appeal from an order of the Public Service Commission of West Virginia entered on June 1, 1972, pursuant to a hearing on an application for a contract carrier permit. By the provisions of said order Clinton Daniels, the applicant, was granted a permit to operate three motor vehicles as a contract carrier in the transportation of road building materials in Kanawha, Clay and adjoining counties under contract with C. M. Geupel Construction Company.

This appeal is prosecuted by Mountain Trucking Company, a corporation, and S. S. "Joe" Burford Company, a corporation, each having appeared at the aforesaid hearing as protestants opposing the grant of a contract carrier permit to Clinton Daniels. Both protestants are common carriers operating under certificates of convenience and necessity issued by lawful orders of the Public Service Commission. Each has authority under said certificates to haul road building materials in the area covered by the subject contract carrier permit.

At the hearing before the commission Daniels testified that he sought a contract carrier permit to operate three motor vehicles in the transportation of road building materials in Kanawha, Clay and adjoining counties. He alleged that such activities would be undertaken pursuant to the terms of a contract with C. M. Geupel Construction Company, Inc. and placed the contract in evidence. While the instrument filed is somewhat vague it appears to meet the requirements of a contract as contemplated by Code, 1931, 24A-1-2, as amended. It appears from the examination and cross-examination of Mr. Daniels that the contract would terminate within a few days of the hearing. He acknowledged that he did not have another contract but hoped to obtain further work under contract with the same company. At the time of the hearing he was operating under a temporary permit issued by the Public Service Commission.

Protesting the issuance of such permit S. Franklin Burford appeared on behalf of S. S. "Joe" Burford Company. He testified that his company had thirty-two trucks which, because of a lack of business, were not in operation at all times; that he had not been contacted by the Geupel company to haul for it; that they have done similar hauling for other contractors and are ready, willing and able to respond to any call by said company; that his company is a member of the West Virginia Motor Tariff Bureau and that it is bound by the tariffs published by said bureau; and that the granting of this contract carrier permit would adversely effect his company. In responding to the last question he editorialized that many contract carrier permits are being issued to owners of a small number of trucks by the commission and that if this practice continues common carriers could be forced out of business.

Dempsey Jones, President of Mountain Trucking Company, offered testimony similar to that of Burford. He did say, however, that his company had done some hauling for Geupel. He, too, testified that some of his trucks were idle due to lack of work and that his company was ready and able to supply this service for the Geupel company and all others. Mr. Jones testified that, as a member of the West Virginia Tariff Bureau, his company and that of Burford operate on a rate of $16.00 per hour whereas Daniels' contract revealed that his charge was $12.00 per hour. No one appeared from the Geupel company to testify as to the need of Daniels' services or to show that the protestants were not furnishing adequate service in that area.

Upon the evidence adduced at the hearing the Commission, in its order, expressed its opinion and found that the applicant was entitled to the authority which he sought. Thereupon it ordered the issuance of the permit as aforesaid.

The appellants, protestants below, assign the following errors: (1) The Commission's order is in violation of Code, 1931, 24A-3-3(a), as amended, wherein it provides

that no contract carrier permit shall be issued unless it is established to the satisfaction of the Commission that the privilege sought will not impair the efficient public service of any authorized common carrier adequately serving the territory in question; (2) The said order is in violation of Code, 1931, 24A-3-6, as amended, in that said section provides that no contract carrier can charge less than the common carriers' rates for substantially the same service; (3) The order was erroneously granted inasmuch as Daniels did not have a contract at the time of the hearing; (4) The order should have been denied because the protestants were ready, willing and able to provide the Geupel company with the desired services; (5) The said order is erroneous in that it contained no findings that (a) appellants services are inadequate or (b) that appellants are unable or unwilling to serve Geupel; and (6) That the Commission's order is arbitrary, contrary to law and unreasonable.

Although numerous errors are assigned on this appeal, the resolution of the issue presented by the first assignment is dispositive of this case. Implicit therein is the appellants' contention that the Commission's order is contrary to the law and is not supported by the evidence in that it totally ignored the requirements of Code, 1931, 24A-3-3 (a), as amended. Where pertinent said Code section provides: "No permit shall be granted unless the applicant has established to the satisfaction of the commission that the privilege sought will not * * * impair the efficient public service of any authorized common carrier or common carriers adequately serving the same territory."

A permit to operate as a contract carrier can be obtained in this state only upon compliance with the provisions of Code, 1931, 24A-3-3, as amended. Thereunder, one seeking such permit must file a proper application with the Public Service Commission; the Commission then will fix a time and place for a hearing on the application; and, after notice thereof is given, as prescribed in Code, 1931, 59-3-1 et seq., as amended, and, in the absence of

any protest, the Commission may waive formal hearing. It is clear, however, that if a protest is received a hearing, upon proper notice, shall be held. Thus, if no protest is received and no hearing is required, the Commission may grant the permit upon the mere application. Where a protest is received, however, a hearing shall be afforded and the applicant must bear the burden of proving that he is entitled to the permit under the provisions of Code, 1931, 24A-3-3, as amended. See Code, 1931, 24A-3-3 (a); *Re Eastwood* (1955), Colo. 10 P.U.R.3d 509; *Re Powell* (1955), Colo. 10 P.U.R.3d 510; *Re Foisy Distributing Co.* (1939), Utah, 31 P.U.R. (N.S.) 342; *Rudy v. Utah Public Service Commission* (1954), 1 Utah 2d 223, 265 P.2d 400. In the words of the statute, it is the applicant's legal obligation to establish "to the satisfaction of the commission that the privilege sought will not * * * impair the efficient public service of any authorized common carrier or common carriers adequately serving the same territory."

The evidence adduced at the hearing in support of and pertinent to the merits of the application in the instant case consists solely of the testimony of the applicant, Clinton Daniels. In the main, his testimony added nothing to the bare statements in his application. Although he requested the right to engage in hauling in Kanawha, Clay and adjoining counties under contract with C. M. Geupel Construction Company, Inc., he readily admitted that he knew of no construction projects in Clay County nor in the counties of Jackson, Roane, Fayette, Boone, Lincoln or Putnam. Furthermore, Daniels acknowledged that the contract upon which he was relying would terminate within a few days of the hearing and he knew of no further work which he would be called upon by Geupel to do. His application for a permit was based wholly on a hope that said construction company would sometime in the future enter into another contract with him for hauling operations.

Each of the protestants testified that the grant of the requested contract carrier permit would adversely affect

their respective companies. There was no testimony or evidence of any kind presented by the applicant to refute those contentions of the protestants. Upon this state of the record the Commission found that the applicant was entitled to a contract carrier permit.

There was no finding of facts by the Commission; nor was an opinion written which, upon appellate review, would make known to the Court the motivating circumstances which influenced the decision. A careful examination of the record fails to disclose any evidence whatever by the applicant which would tend to establish that the grant of this permit would not impair the efficient public service of the common carrier protestants who, undisputedly, were adequately serving the same territory. Succinctly stated, there is no evidence upon which it could be established that under Code, 1931, 24A-3-3, as amended, the applicant is entitled to a contract carrier permit.

We, therefore, find and so hold that the order of the Commission is not supported by the evidence and is clearly wrong. *Wilhite v. Public Service Commission of West Virginia and Consolidated Gas Supply Corp.*, 150 W.Va. 747, 149 S.E.2d 273; *Atlantic Greyhound Corp. v. Public Service Commission et al.*, 132 W.Va. 650, 54 S.E.2d 169.

For the reasons stated herein the order of the Public Service Commission of West Virginia entered on June 1, 1972 is reversed.

*Reversed.*