*In Re:* RATE FILING OF BLUE CROSS HOSPITAL SERVICE,

INC.

WITH THE INSURANCE COMMISSIONER OF THE STATE

OF WEST VIRGINIA ON APRIL 4, 1972

(No. 13460)

Decided April 8, 1975.

*Chauncey H. Browning,* Attorney General, *William R. Wooton,* Assistant Attorney General, for appellant.

*W. E. Mohler* for appellee.

*Wilson Anderson* for amicus curiae Beckley Appalachian Regional Hospital, and others.

BERRY, JUSTICE:

This is an appeal by the West Virginia Insurance Commissioner, hereinafter referred to as the Commissioner, from a final judgment of the Circuit Court of Kanawha County entered June 18, 1973 wherein the Circuit Court ordered the Commissioner to approve the rate filing application made by Blue Cross Hospital Service, Inc., hereinafter referred to as Blue Cross. The Commissioner contends that the proposed rates are excessive, and, therefore the application should not be approved. The Commissioner prays that the judgment of the Circuit Court be reversed and Blue Cross be directed to refund all additional premiums collected from its subscribers as a result of the rate increase ordered by the Circuit Court. This Court granted the Commissioner's appeal on March 18, 1974 and the case was submitted for decision on January 21, 1975 upon the briefs and oral arguments on behalf of the parties and an amicus curiae brief filed on behalf of the twenty-six participating hospitals.

On April 4, 1972 Blue Cross filed for a rate increase with the Commissioner. On May 17, 1972 the Commissioner disapproved the proposed rates, and pursuant to a written demand by Blue Cross public hearings were held on September 13, 1972 and September 27, 1972. The Commissioner contended that the proposed rate increase was not justified because of inefficiencies in Blue Cross administrative and investment policies, and because its reimbursement contracts with the various hospitals

were not in the best interests of Blue Cross subscribers. The Commissioner listed six objections why the proposed rate increase should not be granted: (1) several members of the Board of Trustees were also hospital administrators and thus inherent conflicts of interests were present during the negotiation of hospital reimbursement contracts, (2) Blue Cross reimbursed hospitals for services afforded subscribers in accordance with a formula wherein hospital charges bore no reasonable relationship to costs, (3) there were inefficiencies in the administration of subscriber claims, including unnecessary reimbursements to hospitals, (4) there were inefficiencies in the internal operations of Blue Cross, including the absence of standing committees within the board and inefficiencies in the electronic data processing system, (5) the management engaged in poor financial investment practices partly because of conflicts of interest, and (6) the schedule of fees to be paid to the hospitals was actuarily unsound.

Blue Cross properly assumed the burden of proof and introduced evidence at the hearing before the Commissioner which substantiated its position that a rate increase was needed. An actuary who testified on behalf of Blue Cross at the hearing stated the proposed rates were not excessive, and if not approved, Blue Cross would be insolvent by the middle of 1973. Other evidence was introduced that the current rates were inadequate. Evidence was introduced that Blue Cross administrative expenses were less than the average of all Blue Cross Plans throughout the country. The evidence indicated that the rates charged by the Charleston Blue Cross were less than those charged by Wheeling Blue Cross, although Wheeling's reimbursement contracts had a ceiling of 115% on the ratio of hospital charges to costs, whereas, the average ratio of hospital charges to costs of the Charleston Plan was 129% for those hospitals from which such information was obtained.

The Commissioner introduced into evidence a report prepared by the Blue Cross Association, the national organization representing Blue Cross Plans, which was

requested by Blue Cross to make a study of its operations. This three week study produced a detailed written report which recommended that several changes be made in the local Blue Cross operations. The report stated that the Charleston Plan was an average plan, but was critical in some aspects, and made recommendations for the improvement of the services, some of which had been implemented before the hearing was held by the Commissioner. The reimbursement contracts between the hospitals and Blue Cross, which were negotiated in 1970, provided for the payment by Blue Cross of 93% of the charges for the first year, and 97% for future years. The Blue Cross director stated that the new contract was not as good as the old one, but testified that it took eight months to obtain a new contract and that the present contract was the best contract to which the hospitals would agree.

It is the contention of the Commissioner that he had the right to go beyond the mere mathematical calculations of the rate application, and to determine whether inefficiencies in Blue Cross operations were resulting in higher costs which in turn increased the rate base from which the proposed rate increase was calculated. Additionally, the Commissioner argues that the reimbursement contracts with the hospitals should stipulate that there be a reasonable relationship of the hospitals' charges to the hospitals' actual costs, since hospital charges were shown to be excessive by the fact that the Blue Cross Association report showed that the average ratio of billed charges to hospital costs was 129%. The report recommended that in order to adequately protect the interest of the subscribers to the Blue Cross Plan, there should be effective measures taken to assure that the charges by the hospitals have a reasonable relationship to the hospitals' actual costs.

Moreover, the Commissioner contends that there were conflicts of interest on the board of Blue Cross itself, which resulted in Blue Cross not being able to negotiate the best contract possible with the hospitals. Consequently, the Commissioner contends that taking all

these things into account the rate base of Blue Cross could be significantly lower and the resulting cost savings and increased efficiencies in the operation itself would negate a need for a present rate increase.

On August 28, 1972 another proposed rate increase was filed with the Commissioner by Blue Cross with proposed rates higher than the previously proposed rates filed April 4, 1972. The hearing on the April 4, 1972 rate increase was set for September 13, 1972, and at the time of the hearing the Commissioner had neither approved nor disapproved the August 28, 1972 rate increase and limited the hearing to the April 4, 1972 rate increase, which was objected to by Blue Cross. The ruling of the Commissioner confining the hearing to the April 4, 1972 rate increase request, which was approved by the Circuit Court, was proper under the circumstances of this case.

The parties to· this proceeding apparently cannot agree upon the issues involved. Considering the contentions of both parties, a simplified statement of the issues to be considered in the determination of this case are as follows: (1) Are the proposed rates submitted to the Commissioner for approval excessive? (2) Does the Commissioner have the authority to inquire beyond the mere mathematical accuracy of the figures and to inquire into underlying factors upon which the schedule of rates is based?

The brief of Blue Cross and the amicus curiae brief assert that one of the issues is whether the Commissioner has the authority to control hospital charges for services rendered to Blue Cross subscribers. This is not an issue in this case. Not only does the Commissioner not have such authority, he admits that he does not have such authority. However, he does have the authority, and, the duty, to protect the subscribers of Blue Cross, and to ascertain that hospital charges paid by Blue Cross under its contracts with the participating hospitals have a reasonable relationship to the hospitals' actual costs.

The pertinent part of the statute pertaining to the proposed rate increase involved in this proceeding, Code, 33-24-6(c), as amended, reads as follows:

> No rates to be charged subscribers shall be used or established by any such corporation unless and until the same have been filed with the commissioner and approved by him. The procedure for such filing and approval shall be the same as that prescribed in subsection (b) of this section for the approval of forms. The commissioner shall approve all such rates which are not excessive, inadequate or unfairly discriminatory.

Under the provisions of this statute the Commissioner has the duty to investigate the rates to be charged to the subscribers of Blue Cross after such rates have been filed with him, and approve them if such rates are not excessive, inadequate or unfairly discriminatory. In approving or disapproving such rates the Commissioner has the authority, and the responsibility, to look behind the figures submitted in the application for a rate increase and to determine the adequacy and reasonableness of the hospitals' charges to be paid by Blue Cross on behalf of its subscribers. The Commissioner also has the authority and responsibility to see that the Blue Cross Plan is operated properly and efficiently. *Thaler v. Stern*, 44 Misc.2d 278, 253 N.Y.S.2d 622 (1964); *New Hampshire-Vermont Physician Service v. Durkin*, ____ N.H. ____, 313 A.2d 416 (1973). This authority to investigate and inquire beyond the mere mathematical accuracy of the figures applies to an application for a rate increase.

The Commissioner used the report prepared by the Blue Cross Association styled "Total Plan Review" at the hearing to show the weaknesses and criticism of the Blue Cross operation, but the Commissioner did not introduce into evidence an independent examination of Blue Cross to ascertain such matters as required by Code, 33-24-4, as amended, and Code, 33-2-9, as amended, nor had the Commissioner promulgated rules and regulations to guide Blue Cross as provided in Code, 33-24-1,

as amended. Moreover, the contracts between Blue Cross and the participating hospitals, of which the Commissioner complains, had been previously approved by the Commissioner and he impliedly approved the contracts, every year when he renewed the license for Blue Cross, as required by *Code* 33-24-5, as amended.

The Blue Cross Association report relied on by the Commissioner in the disposition of the rate hearing contains the following statements with regard to the Blue Cross rates:

> During the past three years, the Plan's reserves, in terms of ratio to claims and operating expenses, have steadily decreased. We attribute this to spiralling hospital costs and inadequate rate adjustments. * * * Moreover, the increase in the cost of these services has greatly outpaced the increase in Blue Cross rates. * * * In general, the current rate structure is not unfairly discriminatory, nor are the proposed rates. However, current rates are inadequate and continued losses can be anticipated until substantial rate increases are effected. * * * We have reviewed the methodology used and the calculations made by the Plan in determining the revised Blue Cross subscriber rates proposed * * *. Also we reviewed the statistical data underlying the calculations. In our opinion, the underlying data are substantially accurate and the methods used were sound.

Although the foregoing quote referred to the June, 1971 filing for a rate increase, which was denied by the Commissioner, it is clear from the evidence introduced by the Commissioner that there was an immediate need for a rate increase because of spiralling hospital costs and inadequate rate adjustments.

The disapproval by the Commissioner of hospital administrators on the Board of Trustees of Blue Cross because of alleged conflicts of interest is not justification for the disapproval of the proposed rate increase. *New Hampshire-Vermont Physician Service v. Commissioner, Dept. of Banking and Insurance,* ____ Vt. ____,

326 A.2d 163 (1974). The by-laws of the national associa-
tion of Blue Cross require that at least one-third of the
directors of the local plans be hospital administrators.
In any event, the hospital administrators did not partici-
pate as members of the Board of Trustees of Blue Cross
in the negotiations of the contracts between the hospi-
tals and Blue Cross.

The reported figures showing the ratio of hospital
charges to hospital costs as 129% should be properly
checked and if there is no explanation or justification
therefor, and the hospitals in question refuse to modify
their contracts with Blue Cross to provide for a reason-
able relationship of their charges to their actual costs,
the Commissioner should disapprove the contracts with
the hospitals and order Blue Cross to terminate the
contracts in order to protect the best interests of the
public. Code, 33-3-9, as amended.

Apparently, the rates charged the subscribers of the
Charleston Blue Cross Plan have been excessive in the
past due in part to the advent of Medicare in 1966 and
proper controls were not applied by the Commissioner.
This is indicated by the fact that Blue Cross has not had
a rate increase since 1965 and by virtue of inflation
since that time resulting in large increases in operating
costs, Blue Cross would have been rendered insolvent.
The Commissioner should have controlled this matter by
proper investigation and conducted hearings for such
purpose authorized by Code, 33-2-13, as amended.

If Blue Cross at any time does not comply with the
directions, orders and recommendations of the Commis-
sioner after proper investigations, the Commissioner can
revoke, refuse to renew, suspend the license of Blue
Cross, or in lieu thereof, subject it to a penalty, all of
which is authorized by Code, 33-24-6(d), as amended.

There is no question that Blue Cross can be made to
conform to the law providing for the operation of such
nonprofit corporations. They are given favored consider-
ation under the law and are exempt from the payment

of all taxes, and should be required to charge such rates to the subscribers of the plan that bear a reasonable relationship to the efficient cost of operation in order to adequately protect those members of the public who subscribe for the services offered by Blue Cross. Code, 33-24-1, as amended.

A hearing can be held on the operations of Blue Cross at any time by the Commissioner if warranted by his examination required by Code, 33-24-4, as amended, and if the evidence adduced at the hearing shows that rates are excessive by inquiry into all pertinent matters relative to the rates charged the subscribers by Blue Cross, such rates can be ordered to be reduced. *New Hampshire-Vermont Physician Service v. Durkin, supra.*

Although the Commissioner can require Blue Cross to negotiate contracts with the participating hospitals in order to insure that the amounts paid by the hospitals have a reasonable relationship to the hospitals' actual cost of operation, consideration should be given to necessary operation expenses of such hospitals. The participating hospitals' charges should allow for the cost of improvements, repairs and bad debts by patients who are unable to pay, or do not pay, for the services rendered by the hospitals. On the other hand, the Commissioner cannot approve a rate increase for expensive, unnecessary medical services, or unnecessary expansion of medical facilities.

In summary, the uncontradicted evidence at the hearing before the Commissioner was that the Charleston Blue Cross Plan was an average plan, its costs of administration were lower than other plans, if the proposed rate increase was not approved it would have become insolvent by the middle of 1973, its reserves were decreasing rapidly under the old rate structure, and the investment program of Blue Cross was of a conservative nature and yielded an adequate return on investments. It is also clear that any inefficiencies in the operations of Blue Cross are not so significant as to obviate the necessity of an immediate rate increase. The evidence in

this case clearly shows that the proposed rate increase filed by Blue Cross on April 4, 1972 was not excessive. The evidence introduced on behalf of the Commissioner in the Blue Cross Association report stated that the old Blue Cross rates were inadequate, and the contention of the Commissioner that the proposed rates are excessive is not supported by the evidence introduced in this case. The Commissioner, under the provisions of Code, 33-24-6(d), as amended, disapproved the schedule of fees to be paid the hospitals as being actuarily unsound. Even if this finding is correct, there was insufficient evidence introduced at the hearing to show that the schedule of fees was excessive.

There were several minor issues raised by the parties in the trial court, all of which were properly disposed of by the trial court and it is not necessary to discuss them in the disposition of this case.

The judgment of the Circuit Court of Kanawha County is therefore reversed as to its holding that the Commissioner could not inquire beyond the mere mathematical accuracy of the figures submitted by the rate applicant in ruling upon a rate increase filing, but is affirmed in holding that the proposed rate increase filed by Blue Cross is not excessive and should be approved by the Commissioner.

> *Reversed in part;*
> *affirmed in part.*

HADEN, CHIEF JUSTICE, *dissenting*:

This case involved an appeal by the West Virginia Insurance Commissioner from a final order of the Circuit Court of Kanawha County reversing the Insurance Commissioner's administrative decision which had denied an application for rate increase sought by Blue Cross Hospital Service, Inc.

From beginning to end, the opinion of the majority fails to recognize that this appeal is governed by the

State Administrative Procedure Act, W. Va. Code 1931, 29A-1-1, *et seq.*, as amended. Decisions of the Insurance Commissioner in contested cases are subject to the Act. See Chapter 29A, *id.*, Article 1, Section 1. Any party adversely affected by such decisions may have judicial review of the Commissioner's determination as a matter of right. See Chapter 29A, *id.*, Article 5, Section 4. Upon review:

"(g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:

"(1) In violation of constitutional or statutory provisions; or

"(2) *In excess of the statutory authority or jurisdiction of the agency; or*

"(3) Made upon unlawful procedures; or

"(4) Affected by other error of law; or

"(5) *Clearly wrong in view of the reliable probative and substantial evidence on the whole record; or*

"(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." (Emphasis supplied). 29A-5-4(g), *id.*

Implicitly recognizing those standards, the court below determined that the principal issue in the case was "the scope or extent of the administrative inquiry permitted under the statutes upon ... a rate application." The trial court was very concerned with the Commissioner's exercise of authority under *W. Va. Code* 1931, 33-24-6, as amended, to inquire into underlying causes which brought about the Blue Cross rate application and to use those causes in making a final administrative decision that the rates applied for were "excessive". Dis-

cussing the Commissioner's method of arriving at his decision, the circuit court opined:

"Undoubtedly, applying the established rule of accepting as true those factual findings made by the administrative tribunal which are supported by credible evidence, there are several administrative practices involved in this Plan which are properly criticized, and some of those practices, according to the Insurance Commissioner (also supported by evidence in the record), have cost the Plan significant amounts of money, and will continue to do so unless definite action is taken by Blue Cross.

"Based upon the foregoing findings, the Insurance Commissioner concluded that the proposed rates were excessive, within the meaning of Code, 33-24-6(c). While the Commissioner's reasoning in this regard is persuasive, I do not believe that it was the intent of the Legislature, under Code, 33-24-6(c), to have the Commissioner correct such abuses upon a rate filing application."

This is the crux of the lower court's decision which held that the Insurance Commissioner's decision exceeded the statutory authority of that office. Accordingly, the trial court excluded from its consideration all evidence adduced by the Commissioner detailing conflicts of interest, administrative practices, and contractual obligations of the Blue Cross Plan which had placed the Blue Cross Plan in a precarious financial position and necessitated the application for the rate increase. Rejecting that type of evidence as collateral and beyond the legitimate scope of inquiry, the trial court held:

"In view of the limited purpose of the hearing before the Commissioner upon the rate filing, as herein discussed, I am of opinion that the evidence in this record clearly preponderates in favor of the need for an increase in rates."

On this appeal, the entire Court was of the opinion to and did reverse the legal conclusion of the circuit court

that the Commissioner had exceeded the authority delegated to his office by the Legislature through the enactment of *W. Va. Code* 1931, 33-24-1, *et seq.* This holding is reflected in *syllabus* point 2. and supported by the salutary decision of *Thaler v. Stern,* 44 Misc.2d 278, 253 N.Y.S.2d 622 (1964).

Now, having concluded that the trial court was wrong and that the Insurance Commissioner did have the authority to inquire into those factors which caused Blue Cross to seek a rate increase and to employ those factors as a factual basis for a determination that the rate increase applied for was excessive, it astounds me that the Commissioner's decision was not reinstated by this Court.

In reviewing factual determinations of the administrative agency, this Court should not reverse such determinations unless they are, in the words of the statute: "clearly wrong in view of the reliable, probative and substantial evidence on the whole record . . . ." *W. Va. Code* 1931, 29A-5-4(g)(5)., *id.* This Court recently recognized and held that it would not reverse a finding of fact by an agency whose determinations were subject to the State Administrative Procedure Act unless it was contrary to the evidence or based upon a mistake of law "In other words, the finding must be clearly wrong to warrant our 'judicial interference.'" *Billings v. Civil Service Commission,* 154 W. Va. 688, 692, 178 S.E.2d 801, 804 (1971). Accord: *Brown v. Civil Service Commission,* 155 W. Va., 186 S.E.2d 840, 846 (1972); *Caldwell v. Civil Service Commission,* 155 W. Va., 184 S.E.2d 625, 628 (1971); *Appeal of Prezkop,* 154 W. Va. 759, 763, 179 S.E.2d 331, 334 (1971). Without in any manner inpugning the integrity of the Commissioner's decision, *i.e.,* as being "arbitrary or capricious or precarious or characterized by abuse of discretion or clearly unwarranted exercise of discretion", this Court gave absolutely no persusasive weight to the twenty-eight page opinion of the Insurance Commissioner in which the Commissioner weighed evidence, made extensive findings of fact and concluded

as a matter of law that the rates applied for by Blue Cross were excessive within the meaning of *W. Va. Code*, 33-24-6(c), as amended.

Besides doing grievous harm to the many thousand subscribers to the Blue Cross Plan who now must pay increased premiums for hospital and medical insurance because of the uncontrollable costs and other abuses found and condemned by the Commissioner, this decision does great violence to the principles of administrative law recognized and applied by this Court consistently through the years. West Virginia law unquestionably requires that a court find an administrative agency's factual determination "clearly (or "plainly") wrong" before it may reverse that body's decision on factual matters. See, for example, *Mountain Trucking Co. v. Daniels*, W. Va., 197 S.E.2d 819 (1973); *Brown v. Civil Service Commission, supra; Barnett v. Workmen's Compensation Commissioner*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *Wilhite v. Public Service Commission*, 150 W. Va. 747, 149 S.E.2d 273 (1966); *Partlow v. Workmen's Compensation Commissioner*, 150 W. Va. 416, 146 S.E.2d 833 (1966); *Dombrosky v. State Compensation Director*, 149 W. Va. 343, 141 S.E.2d 85 (1965); *Tate v. State Compensation Director*, 149 W. Va. 51, 138 S.E.2d 636 (1964); *Burr v. State Compensation Commissioner*, 148 W. Va. 17, 132 S.E.2d 636 (1963); *United Fuel Gas Co. v. Public Service Commission*, 143 W. Va. 33, 99 S.E.2d 1 (1957); *Chesapeake & O. R. Co. v. Public Service Commission*, 139 W. Va. 161, 81 S.E.2d 700 (1953); *Huntington v. State Water Commission*, 137 W. Va. 786, 73 S.E.2d 833 (1953); *McCloud v. Hix*, 137 W. Va. 148, 70 S.E.2d 589 (1952); *Walk v. State Compensation Commissioner*, 134 W. Va. 223, 58 S.E.2d 791 (1950); *Vento v. State Compensation Commissioner*, 130 W. Va. 577, 44 S.E.2d 626 (1947); *West Central Producers Co-op. Ass'n v. Commissioner of Agriculture*, 124 W. Va. 81, 20 S.E.2d 797 (1942); *Harrisville v. Public Service Commission*, 103 W. Va. 526, 138 S.E. 99 (1927); *Huntington v. Public Service Commission*, 89 W. Va. 703, 110 S.E. 192 (1921); *Mill Creek Coal & Coke Co. v. Public Service Commission*, 84 W. Va. 662, 100 S.E. 557

(1919); *Norfolk & W. R. Co. v. Public Service Commission*, 82 W. Va. 408, 96 S.E. 62 (1918).

The impelling reason that this Court has applied the "clearly wrong" standard to factual determinations made by an administrative body inheres in the Constitution. Article V, Section 1, of the *West Virginia Constitution*, the Separation of Powers Clause, prohibits the judiciary from exercising the functions of the Legislature or its delegate, an administrative agency. It is clear that a court should not exercise original jurisdiction to issue an administrative order nor should it do so under the guise of appeal and trial *de novo*. Harrison, *The West Virginia Administrative Act*, 66 W.Va. L.Rev. 159, 185-190 (1964). Where a court assumes jurisdiction to do anything which an agency is required to do, such juridical action involves the exercise of administrative or legislative functions and is unconstitutional under Article V, Section 1, of the *West Virginia Constitution. State ex rel. Richardson v. Kanawha County Court* 138 W. Va. 885, 78 S.E.2d 569 (1953); *City of Huntington v. State Water Commission*, 135 W. Va. 568, 64 S.E.2d 225 (1951); *Sims v. Fisher*, 125 W. Va. 512, 25 S.E.2d 216 (1943); *Staud v. Sill & See*, 114 W. Va. 208, 171 S.E. 428 (1933); *Hodges v. Public Service Commission*, 110 W. Va. 649, 159 S.E. 834 (1931). *See also*, Davis, *Judicial Review of Administrative Action in West Virginia—A Study in Separation of Powers*, 44 W. Va. L.Q. 270 (1938), and Donley, *The Hodges Case and Beyond. A Reply to Professor Davis*, 45 W. Va. L. Q. 291 (1939).

In addition to blithely ignoring the judicial standard for administrative review, the decision of the majority leaves the parties to this appeal, and future litigants in rate regulation cases, in a quandary as to whether the Insurance Commissioner retains meaningful regulatory powers over the operation of hospital, medical, and dental service corporations.

To be meaningful, rate regulation must go well beyond the mere arithmetic of a rate calculation or mere recognition that the suppliant insurer is financially embar-

rassed and "needs" to charge higher premiums from subscribers. The legislative policy requires that the Commissioner subject the corporation to "such regulation as may be necessary for the adequate protection" of Blue Cross subscribers. *W. Va. Code* 33-24-1, as amended.

If this Court concludes, as it has, that the Commissioner has the authority and responsibility "to determine the adequacy and reasonableness of the charges to be paid to the participating hospitals by the hospital service corporation on behalf of its subscribers. (and) ... to ascertain whether or not the hospital service corporation is operated properly and efficiently." Syllabus Point 2, and the Commissioner has done that in his decision, what, pray tell, renders his decision nugatory?

On the other hand, if abuses, such as: overt conflicts of interest in the service corporation board membership resulting in monetary loss and condemned by Statute (*W. Va. Code* 1931, 33-4-17, as amended) and management inefficiencies and weaknessess—which foster uncontrollable, excessive charges do not warrant denying a proposed rate increase, what grounds do?

This Court's opinion may have emasculated, and certainly has confused, the Commissioner's effectible regulatory power over Blue Cross rates. Left unchallenged, it will reduce the Commissioner to "a mere automaton blindly approving mathematically correct adjustments in the [rate] formula." *Thaler v. Stern, supra,* at 630 of the N.Y.S.2d Reporter.

Finally, the statutory citations relied upon in the majority opinion seem, by and large, to be inapposite references for the propositions stated.

For these reasons, I am unable to agree with the decision in this case.