# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0345**  (Mercer County 15-F-210)

**Billy W.,**
**Defendant Below, Petitioner**

**FILED**

**January 27, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner and defendant below Billy W., by counsel Earl H. Hager, appeals the March 17, 2016, order entered in the Circuit Court of Mercer County that denied his motion for a new trial following his conviction by a jury of one count of child abuse resulting in serious bodily injury and ordered that he serve an indeterminate term of incarceration of two to ten years. Petitioner also appeals the circuit court's order entered on March 22, 2016, that ordered, inter alia, that petitioner serve a term of supervised release for a period of ten years. The State of West Virginia, by counsel Gordon L. Mowen, II, filed a response in support of the circuit court's orders.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 30, 2014, petitioner's sixth-month old son, C.W., was taken by ambulance to a hospital in Charleston, Kanawha County, West Virginia, where it was determined that he had stopped breathing; bleeding in his brain; several broken ribs; retinal hemorrhages in the back of his eye, extensive bilateral retinal hemorrhages in the middle of his eye, and retinoschisis (i.e., a split retina); and was having severe seizures. According to pediatrician Dr. Joan Phillips, who treated C.W. at the hospital and who is an expert in child abuse physiology, C.W.'s injuries were caused by two separate events. The first, which caused brain damage and internal bleeding, occurred approximately three weeks earlier. Dr. Philips opined that the second, more recent event, which caused the brain hemorrhaging, detached retinas, and broken ribs, occurred within one week of C.W.'s May 30th hospital visit. With regard to the retinal injuries, Dr. Phillips opined that "we know from accident trauma that the kind of force that it takes to give you severe retinal hemorrhage is comparable to a motor vehicle roll over. . . . So, it's that [acc]eleration deceleration. . . . The retinoschisis is almost uniquely part of abusive head trauma." According to Dr. Phillips, C.W.'s broken ribs and seizures were also consistent with child abuse.

1

An investigation into C.W.'s injuries by police revealed that C.W. was placed in foster care with his siblings because his mother's parental rights had previously been terminated; that the mother had obtained custody of C.W. in January of 2015; that, at that time, petitioner was only permitted to have supervised visitation with C.W.;[1] and that, despite this limitation, petitioner began living with the mother and C.W. in April of 2014, and lied to Child Protective Services ("C.P.S.") about his living arrangements. The police investigator determined that petitioner was alone with C.W. when the injuries herein occurred.

In a recorded voluntary statement to police, petitioner admitted that he violated the terms of his limited visitation rights and that he was C.W.'s primary caretaker from April of 2014 through May of 2014. Petitioner told police that, on May 19, 2014 (the first incident), C.W. hit his head on a piece of wood on the couch while petitioner was tossing him into the air; that C.W. began vomiting shortly thereafter; and that a bruise appeared on C.W.'s head the next day. The mother took C.W. to the hospital and, upon his return home, C.W. continued vomiting off and on until May 29, 2014.

Petitioner further admitted that, on May 29 and 30, 2014 (the second incident), he was home alone with C.W. At approximately 5:30 a.m., C.W. began crying, screaming, and vomiting. According to petitioner, he shook C.W. "a little bit" and then C.W. stopped breathing. Petitioner called 9-1-1 at 6:01 a.m.[2] The 9-1-1 operator talked petitioner through administering C.P.R. in an effort to resuscitate C.W. Petitioner told police that he "panicked" but did not believe he shook C.W. hard enough to cause retinal hemorrhaging or internal brain bleeding. An ambulance arrived soon thereafter and transported C.W. to the hospital where he was diagnosed as previously described herein.

On June 5, 2015, petitioner was indicted in the Circuit Court of Mercer County on charges of child abuse resulting in serious bodily injury, in violation of West Virginia Code § 61-8D-3(b). Count I stemmed from the incident that occurred earlier in May of 2014, while Count III stemmed from the incident that occurred on May 29 or 30, 2014. Petitioner's co-defendant was C.W.'s mother. Counts II and IV of the indictment charged her with child neglect resulting in injury. The proceedings against the mother were severed from petitioner's and are not at issue in this appeal.[3]

Petitioner was tried before a jury on June 12 and 13, 2016. At trial, petitioner's recorded statement to police was played for the jury. Petitioner also testified in his own defense. He testified consistently with his statement to police, and also testified he could have broken C.W.'s ribs while performing C.P.R. before the ambulance arrived. Dr. Phillips countered petitioner's

---

[1] The record does not indicate why petitioner was granted only supervised visitation with C.W.

[2] Petitioner identified himself to 9-1-1 as "Thomas Stacey" because he knew that he was only permitted to have supervised visitation with C.W. and was not permitted to be alone with him.

[3] The status of C.W.'s mother's criminal case is not a part of the record herein.

testimony by opining that it was highly unlikely that performing C.P.R. on an infant could have fractured C.W.'s ribs because infants' bones are springy, resilient, and not prone to fractures.

Petitioner was convicted of one count of child abuse resulting in serious bodily injury (Count III). He was acquitted of the remaining count (Count I). On January 21, 2016, petitioner filed a motion for a new trial, which was denied by order entered March 17, 2016. Petitioner was sentenced to two to ten years of incarceration. In a March 22, 2016, order, the circuit court ordered petitioner to serve a term of supervised release for a period of ten years after his period of incarceration, pursuant to West Virginia Code § 62-12-26. This appeal followed.

In his first assignment of error, petitioner argues that the circuit court erred in sentencing him to supervised release for a period of ten years because the clear intent of the statute under which he was sentenced, West Virginia Code § 62-12-26, is that such a penalty applies only to offenses of a sexual nature. Petitioner relies, in particular, upon the statute's title, "Extended supervision for certain sex offenders; sentencing; conditions; supervision provisions; supervision fee," which petitioner contends makes no reference to offenses strictly involving child abuse. Given that he was convicted of one count of child abuse resulting in serious bodily injury, in violation of West Virginia Code § 61-8D-3, petitioner argues that the provisions of West Virginia Code § 62-12-26, requiring the imposition of a period of extended supervised release, were not intended to apply to him.

This appeal presents a question of law involving an interpretation of a statute. As this Court held in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." 194 W. Va. 138, 459 S.E.2d 415 (1995).

West Virginia Code § 62-12-26(a) provides, as follows:

Notwithstanding any other provision of this code to the contrary, **any defendant convicted** after the effective date of this section **of a violation of** section twelve [§ 61-8-12], article eight, **chapter sixty-one** of this code or a felony violation of the provisions of article eight-b [§§ 61-8B-1 et seq.], eight-c [§§ 61-8C-1 et seq.], **or eight-d [§§ 61-8D-1 et seq.]**[4] of said chapter **shall, as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, a period of supervised release of up to fifty years**: Provided, That the period of supervised release imposed by the court pursuant to this section for a defendant convicted after the effective date of this section as amended and reenacted during the first extraordinary session of the Legislature, 2006, of a violation of section three [§ 61-8B-3] or seven [§ 61-8B-7], article eight-b, chapter sixty-one of this code and sentenced pursuant to section nine-a [§ 61-8B-9a] of said article, shall be no less than ten years: Provided, however, That a defendant designated after the effective date of this section as amended and reenacted during the first extraordinary session of the Legislature, 2006, as a sexually violent predator pursuant to the provisions of section two-a [§

---

[4] As previously noted, petitioner was convicted of child abuse resulting in serious bodily injury, in violation of West Virginia Code § 61-8D-3.

15-12-2a], article twelve, chapter fifteen of this code shall be subject, in addition to any other penalty or condition imposed by the court, to supervised release for life: *Provided further,* That pursuant to the provisions of subsection (g) of this section, a court may modify, terminate or revoke any term of supervised release imposed pursuant to subsection (a) of this section.

(Emphasis and footnote added).

Despite this clear statutory language, petitioner, nonetheless, contrasts his crime involving strictly physical abuse[5] with crimes of a sexual nature that are set forth in West Virginia Code §§ 61-8-12 (incest), 61-8B-1 through 18 (various sexual assault and sexual abuse crimes), and §§ 61-8C-1 through 11 (filming and distributing sexually explicit conduct of minors and other similar prohibitions). Petitioner argues that although two provisions included in West Virginia Code §§ 61-8D-1 through 9 are sexual offenses, the remaining provisions involve physical, non-sexual crimes that, he claims, are not intended to subject defendants to the supervised release penalty set forth in West Virginia Code § 62-12-26(a). Finally, as additional support for his position, petitioner points to the language of West Virginia Code § 62-12-26(e), which provides that "any defendant sentenced to a period of supervised release pursuant to this section shall be required to participate in appropriate offender treatment programs or counseling during the period of supervised release . . . ." *Id.* in relevant part. Petitioner argues that reference to "offender treatment programs or counseling" means the "Sex Offender Treatment Program," as petitioner knows of no comparable treatment program for child abusers.[6]

Based upon our review herein, we find no error. The plain and unambiguous language of West Virginia Code § 62-12-26(a) provides that "any defendant convicted . . . [of] a felony violation of the provisions of . . . [61-8D-1 et seq.] shall . . . as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, a period of supervised release of up to fifty years[.]" Petitioner concedes that his

---

[5] West Virginia Code § 61-8D-3(b) provides as follows:

(b) If any parent, guardian or custodian shall abuse a child and by such abuse cause said child serious bodily injury as such term is defined in section one, article eight-b of this chapter, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be fined not less than $1,000 nor more than $5,000 and committed to the custody of the Division of Corrections not less than two nor more than ten years.

[6] Petitioner also argues that this Court has previously recognized West Virginia Code § 62-12-26 as a statute that applies exclusively to sex offenders and not to child abusers whose crimes were not sexual in nature. Citing to *State v. Hargus*, 232 W.Va. 735, 753 S.E.2d 893 (2013) and *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011), petitioner refers to passages in those cases in which this Court characterized the statute as one providing for a period of extended supervision for sex offenders. We find this argument to be unpersuasive because the defendants in those cases were convicted of sex crimes and the issue of whether West Virginia Code § 62-12-26 applies to non-sex offenders was not at issue.

4

crime—a violation of West Virginia Code § 61-8D-3, child abuse resulting in serious bodily injury—clearly falls within "61-8D-1 et seq." As this Court has previously acknowledged,

> You can look to the title of the statute to ascertain intent, *City of Huntington v. State Water Comm.*, 135 W.Va. 568, 64 S.E.2d 225 (1951), but the title can not [sic] limit the plain meaning of the text, *Mazzella v. Yoke*, 70 F.Supp. 462 (S.D.W.Va. 1947). Don't confuse the title with chapter, article and section headings which cannot be used to ascertain intent, W. Va. Code, 2-2-12 (1965).

*Virginia Elec. & Power Co. v. Pub. Serv. Comm'n of W.Va.*, 162 W. Va. 202, 206, n.2, 248 S.E.2d 322, 325 n.2 (1978). *See* W.Va. Code § 2-2-12 (stating that "[c]hapter, article or section headings . . . of any act of the Legislature . . . are hereby declared to be mere catchwords and shall not be deemed or construed . . . as indicating or expressing legislative intent or purpose.") Indeed,

> "'[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syllabus Point 1, *State v. Jarvis,* 199 W.Va. 635, 487 S.E.2d 293 (1997).

Syl. Pt. 5, *State v. McGilton*, 229 W. Va. 554, 729 S.E.2d 876 (2012). Accordingly, we find that the circuit court did not err in applying the plain language of West Virginia Code § 62-12-26(a) and imposing a period of supervised release of ten years upon petitioner upon his release from incarceration.

In his next assignment of error, petitioner argues that he was entitled to a new trial because the jury verdict was contrary to the weight of the evidence. Specifically, petitioner argues that he was the only eyewitness to the events causing C.W.'s injuries and that his testimonial account of the same did not support a conviction of child abuse resulting in serious bodily injury. Petitioner points to his testimony that the original injury occurred due to a flaw in the couch where he was playing with C.W.; that, with regard to the second injury, petitioner was in a panicked state and may have accidentally fractured C.W.'s ribs by improperly administering C.P.R. on him; that he may have shaken C.W. too hard in an effort to revive him; and that C.W. fell less than three feet off of a couch. Petitioner further contends that the State's expert, Dr. Phillips, testified—albeit reluctantly—that it would not be impossible for C.W. to have concussive vomiting and a brain bleed as a result. Petitioner argues that the jury was properly instructed that if it viewed the evidence as reasonably permitting either innocence or guilt, then the jury should adopt the conclusion of innocence. Given the jury charge and petitioner's version of events, petitioner contends that "the jury was required to adopt the conclusion of innocence, and that the Court erred in not granting a new trial[.]"

Our standard of reviewing appeals that challenge the sufficiency of the evidence is "highly deferential." *State v. Guthrie*, 194 W. Va. 657, 667, 461 S.E.2d 163, 173 (1995). As we explained in syllabus points one and three of *Guthrie*,

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at

trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*Id.* at 663, 461 S.E.2d at 169.

We find no error. "The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses." (internal quotations and citation omitted)) Syl. Pt. 2, *State v. Martin,* 224 W. Va. 577, 687 S.E.2d 360 (2009). Indeed, "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact. . . . It is for the jury to decide which witnesses to believe or disbelieve. Once the jury has spoken, this Court may not review the credibility of the witnesses." *Guthrie,* 194 W.Va. at 669 n. 9, 461 S.E.2d at 175 n. 9. In this case, the jury clearly found petitioner not to be a credible witness as he violated the terms of his supervised visitation with C.W. by living with C.W. and his mother and being the child's primary caretaker. Petitioner admitted that he lied to C.P.S. about his living arrangements. Petitioner also gave the 9-1-1 operator a false name when he called for help. Thus, the jury was entitled to discount petitioner's self-serving and improbable account of C.W.'s injuries. Rather, the jury found the testimony of Dr. Phillips to be more credible. Dr. Phillips not only treated C.W. at the hospital but she is also an expert in child abuse physiology. Dr. Phillips testified, to a reasonable degree of medical certainty, that C.W.'s severe injuries were consistent with child abuse. For example, she testified that split retinas (retinoschisis), as suffered by C.W., are not caused by accidental trauma such as shaking a baby in an effort to wake him up. Rather, according to Dr. Phillips, retinoschisis is caused by a rapid acceleration and deceleration of the head. Dr. Phillips also testified that a short fall off of a couch or playfully tossing C.W. into the air "would not be logical or a medical explanation" for the injuries to C.W.'s brain, including bleeding, seizures and loss of consciousness. Dr. Phillips further testified that rib fractures caused by the administering of C.P.R. "is exceedingly rare."

This Court has clearly established that it is a jury's role to weigh the evidence presented and to decide the credibility of the witnesses' testimony. Viewing the evidence in the light most favorable to the State, we find no error in the jury's conclusion that the evidence was sufficient

to convict petitioner of one count of child abuse causing serious bodily injury.

In his final assignment of error, petitioner argues that the circuit court erred in denying his motion for a new trial on the ground that the State incorrectly stated during closing argument that the jury could infer intent from the consequences of petitioner's actions or from the seriousness of the victim's injuries. Specifically, the State argued in rebuttal that "[i]ntent can be shown by the level of force inflicted on that baby and intent is to be determined by the fact that this baby's brain is torn in two places at two separate times, that his retinas are torn from the backs of his eyes."

Petitioner concedes that trial counsel failed to object to the State's remarks. This Court has cautioned that

> """[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a . . . [forfeiture] of the right to raise the question thereafter in the trial court or in the appellate court." Point 6, Syllabus, *Yuncke v. Welker,* 128 W.Va. 299 [36 S.E.2d 410 (1945)].' Syllabus point 7, *State v. Cirullo,* 142 W.Va. 56, 93 S.E.2d 526 (1956)." Syl. Pt. 5, *State v. Davis,* 180 W.Va. 357, 376 S.E.2d 563 (1988).' Syllabus Point 1, *Daniel B. by Richard B. v. Ackerman,* 190 W.Va. 1, 435 S.E.2d 1 (1993)."

Syl. Pt. 5, *Tennant v. Marion Health Care Found., Inc.,* 194 W. Va. 97, 459 S.E.2d 374 (1995). Thus, on appeal, petitioner maintains that the propriety of the State's closing remarks should be reviewed for plain error. This Court has held that "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller,* 194 W. Va. 3, 459 S.E.2d 114 (1995).

In this case, petitioner fails to make any argument in support of his contention that the State's closing remarks were plainly error, affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of his criminal trial. *See Id.* This Court has cautioned that "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996). We have further explained that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.] Judges are not like pigs, hunting for truffles buried in briefs." *State, Dept. of Health and Human Resources v. Robert Morris N.,* 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995). Because petitioner has failed to adequately argue that the State's closing remarks constitute plain error, we decline to address this assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 27, 2017

7

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker